Joseph J. Siprut*
*jsiprut@siprut.com*
James M. McClintick
*jmcclintick@siprut.com*
Aleksandra M. S. Vold
*avold@siprut.com*
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA 92101
619. 255.2380
Fax: 619.231.4984

(Additional Plaintiffs' Counsel listed in signature block)

*Pro hac vice* admittance to be sought

*Counsel for Plaintiffs and the Proposed Putative Classes*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD BURTON, on behalf of himself and all others similarly situated, | Case No. CV12-06764 JAK (AJWx) |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| TIME WARNER CABLE INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiff Todd Burton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint against Defendant Time Warner Cable Inc. ("Time Warner" or "Defendant"). Plaintiff, on his own behalf and on behalf of a class of similarly situated individuals, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I. NATURE OF THE ACTION

1.     Cable and satellite television are a staple in American households, viewed by many to be as ordinary and essential as gas and electric service. Time Warner uses its position as one of the nation's largest providers of cable television to collect personal information – such as names, addresses, social security numbers, and credit card numbers – from tens of millions of consumers across the country.

2.     After consumers terminate their service with Time Warner, however, and this information is no longer needed to provide service or collect payment, Time Warner continues to maintain personally identifiable information on all of its previous customers indefinitely. This conduct violates the Cable Communications Policy Act, 47 U.S.C. § 551, *et. seq.* ("CCPA"), which requires cable operators to destroy personally identifiable information when it is no longer required for the purpose for which it was collected.

3.     Moreover, consumers are unaware that their personally identifiable information is retained indefinitely by Time Warner, as Time Warner fails to send annual privacy notices informing consumers that Time Warner continues to retain their information. This conduct constitutes additional violations of CCPA.

4.     Accordingly, Plaintiffs assert claims on their own behalf and on behalf of the other members of the below-defined Class for violations of CCPA, 47 U.S.C. § 551 (a) & (e), plus additional claims under California state law on behalf of a California Subclass.

## II. JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. §§ 2520 and 2707 and 18 U.S.C. § 1030.  This Court also has supplemental jurisdiction over Plaintiffs' state statutory claims and common-law claims under 28 U.S.C. § 1367.

6.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).   In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Time Warner.

7.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and Time Warner conducts substantial business in this District.  Specifically, Time Warner provides cable and Internet services for residents and commercial facilities in towns and cities throughout this District, subjecting it to this Court's personal jurisdiction and making it a "resident" of this District for purposes of venue.

## III. PARTIES

*Plaintiff*

8.     Todd Burton ("Burton") is a natural person and citizen of the State of California.

*Defendant*

9.     Time Warner is a Delaware corporation headquartered at 60 Columbus Circle in New York City, New York.   Time Warner is one of the nation's most prominent cable providers, servicing more than 20 million cable customers.   Time Warner provides cable services to customers in 28 states, including the State of California.

## IV. **FACTUAL BACKGROUND**

*The Cable Communications Policy Act*

10.     On October 30, 1984, Congress passed the Cable Communications Policy Act ("CCPA") in order to promote competition among providers of cable services and establish a national policy concerning cable communications and their operators.   An important objective of Congress in establishing such a policy was to protect cable subscribers' sensitive personal information from misuse and improper disclosure. To that end, Congress made sure that the Act incorporated privacy guidelines jointly established several years earlier by the 34 nations comprising the Organization for Economic Cooperation and Development.

11.     When CCPA was under debate, legislative leaders noted that both common-sense privacy concerns and the constitutional rights of citizens were at stake:

> Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber.   Subscriber records from interactive systems can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions. It is [therefore] important that national cable legislation establish a policy to protect the privacy of cable subscribers.   A national policy is needed because, while some franchise agreements restrict the cable operator's use of such information, privacy

issues raise a number of federal concerns, including protection of the subscribers' first, fourth, and fifth amendment rights. At the same time, such a policy must also recognize and unnecessarily or unreasonably impede those flows of information necessary to provide the service to the subscribers.

H.R. Rep. 98-934 at 4666-67 (1984).

12.     These observations, now nearly 30 years old, are just as relevant today. Subscribers continue to disclose some of their most sensitive identifying information to their cable operator as a condition to entering into a contract for service. Now – far more than ever before – Time Warner and other cable operators are equipped to rapidly collect and indefinitely retain large volumes of this valuable data in their electronic records.

13.     There are numerous serious and troubling privacy issues implicated by Time Warner's practice of retaining and misusing their former customers' personal information, including the risk of identity theft and conversion of personal financial accounts.

14.     Accordingly, CCPA affords consumers significant protection with respect to the collection, maintenance, and disclosure of personally identifiable information ("PII") provided by the subscriber to the cable operator.

15.     Specifically, CCPA requires cable operators to provide annual notice setting forth the "nature of personally identifiable information collected;" "the nature, purpose, and frequency of any disclosure" of that information; the "period during which such information will be maintained;" "the times and place at which the subscriber may have access to such information;" and the limitations imposed on the cable operator by this provision of CCPA. 47 U.S.C. § 551(a)(1).

16.     In addition, CCPA governs the way that cable operators are to destroy the PII of former subscribers. CCPA requires that cable operators must destroy the

1  PII of former subscribers "if the information is no longer necessary for the purpose
2  for which it was collected" and there are no outstanding requests or orders for such
3  information. 47 U.S.C. § 551(e).

4      17.   Under CCPA, "personally identifiable information" is not specifically
5  defined.   However, the courts have concluded that it broadly encompasses
6  "specific information about the subscriber, or a list of names and addresses on
7  which the subscriber is included."[1]

8  **_Time Warner's Collection of Consumers' PII_**

9      18.   Time Warner has been in existence since 1989, when it was formed
10  through the merger of Time, Inc.'s cable division and Warner Cable. Time Warner
11  has continued to grow rapidly, offering a range of services that includes cable
12  television, DVR services, and digital phone subscriptions.  Time Warner serves
13  more than 20 million cable customers, nearly 9 million high-speed Internet
14  customers, and more than 4 million voice customers.[2]  In 2011, the company
15  earned nearly $20 billion in gross revenues and had a profit of approximately $1.6
16  billion.[3]

17      19.   Time Warner requests that subscribers provide PII to Time Warner in
18  order to receive cable service, including social security number, address, phone
19  number, and credit and debit card information.

20      20.   Once Time Warner obtains that information, it maintains a digital
21  record system with every subscriber's personal information, adding to each
22  consumer's file as they acquire more information.

23      21.   Time Warner's online Privacy Policy provides as follows:

24

25      [1] _See, e.g., Scofield v. Telecable of Overland Park, Inc._, 973 F.2d 874, 876 fn. 2 (10th
     Cir. 1992).
26      [2] http://www.timewarnercable.com/Corporate/about/highlights/default.html (last visited
     May 29, 2012).
27      [3] http://en.wikipedia.org/wiki/Time_Warner_Cable (last visited May 29, 2012).

28

We maintain personally identifiable information about subscribers for as long as it is necessary for business purposes. This period of time may last as long as you are a subscriber and, if necessary, for additional time so that we can comply with tax, accounting and other legal requirements. When information is no longer needed for these purposes, it is our policy to destroy or anonymize it.[4]

### Time Warner's Unlawful Retention of Consumers' PII

22.    While Time Warner's Privacy Policy claims that consumer information is destroyed after it is no longer needed for business, tax, accounting, or legal purposes, in practice, Time Warner simply retains consumers' PII indefinitely.   Moreover, "anonymizing" the data does not alone constitute compliance with CCPA.

23.    This indefinite retention of PII is prohibited by CCPA, which requires cable operators to "destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected."  47 U.S.C. § 551(e).

24.    Time Warner also fails to provide CCPA-mandated privacy notices to customers whose accounts have been closed, but whose information is still retained by Time Warner.   Those consumers are thus unaware that their information is retained indefinitely by Time Warner.

25.    CCPA requires that cable operators provide written notice at least once a year regarding the retention and disclosure of PII, "clearly and conspicuously" informing the consumer of "the nature of personally identifiable information collected ... and the nature of the use of such information; [ ] the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the

---

[4] http://help.twcable.com/html/twc_privacy_notice.html (last visited May 29, 2012).

1  disclosure may be made; [ ] the period during which such information will be
2  maintained by the cable operator; [and] the times and places at which the
3  subscriber may have access to such information." 47 U.S.C. § 551(a).

4      26.    After the termination of services, Time Warner fails to provide notice
5  to consumers regarding the type of PII collected and retained, and any disclosure
6  of that information that may have occurred.

7  ***Consumers Place a High Value on Their PII***

8      27.    At a Federal Trade Commission ("FTC") public workshop in 2001,
9  Commissioner Orson Swindle described the value of a consumer's personal
10 information as follows:

> The use of third party information from public records,
> information aggregators and even competitors for
> marketing has become a major facilitator of our retail
> economy.   Even [Federal Reserve] Chairman [Alan]
> Greenspan suggested here some time ago that it's
> something on the order of the life blood, the free flow of
> information.[5]

16     28.    Though Commissioner's Swindle's remarks are more than a decade
17 old, they are even more relevant today, as consumers' personal data functions as a
18 "new form of currency" that supports a $26 billion per year online advertising
19 industry in the United States.[6]

20     29.    The FTC has also recognized that consumer data is a new – and
21 valuable – form of currency.   In a recent FTC roundtable presentation, another
22 former Commissioner, Pamela Jones Harbour, underscored this point by observing:

---

25 [5] *The Information Marketplace: Merging and Exchanging Consumer Data*,
   http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).
26 [6]       *See     Web's      Hot      New      Commodity:      Privacy*,
   http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html   (last
27 visited May 20, 2012).

28

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency.   The larger the data set, the greater potential for analysis – and profit.[7]

30.   Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties.  The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. And by making the transaction transparent, consumers will make a profit from the surrender of their PII.[8]  This business has created a new market for the sale and purchase of this valuable data.[9]

31.   In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data.  Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[10]

32.   Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable.  Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible,

[7] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf  (last visited May 20, 2012).

[8] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[9] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html  (last visited May 20, 2012).

[10] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

1  some consumers are willing to pay a premium to purchase from privacy protective
2  websites."[11]

3      33.   When consumers were surveyed as to how much they valued their
4  personal data in terms of its protection against improper access and unauthorized
5  secondary use – two concerns at issue here – they valued the restriction of improper
6  access to their data at between $11.33 and $16.58 per website, and prohibiting
7  secondary use to between $7.98 and $11.68 per website.[12]

8      34.   Given these facts, any company that transacts business with a
9  consumer and then retains that consumer's PII in contravention of statutorily
10 guaranteed privacy protections has thus deprived that consumer of the full monetary
11 value of the consumer's transaction with the company.

12 **Facts Pertaining to Plaintiff Burton**

13     35.   In or about August 2002, Burton signed up for Time Warner cable
14 services.  In order to activate his service, Time Warner required Burton to provide
15 Time Warner with various forms of PII, including his address, home and work
16 telephone numbers, social security number, and credit card information.

17     36.   In or about December 2009, Burton canceled his service with Time
18 Warner.

19     37.   On information and belief, as of the date of this filing, Time Warner
20 still retains Burton's PII.

21     38.   Since canceling his service, Burton has never received notice from
22 Time Warner informing him that Time Warner still retains his PII.  Specifically,
23 Burton has not received any notices from Time Warner informing him of the
24 nature of the information collected; the nature, purpose and frequency of any

25

26     [11] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on
27 Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).
         [12] *Id.*

28

1   disclosure which was made of this information; the period of time during which
2   Time Warner will maintain this information; and the time and place that Burton
3   may gain access to this information.

## V.  CLASS ACTION ALLEGATIONS

39.    Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who signed up for cable service with Time Warner, and whose personally identifiable information was retained by Time Warner after the termination of services (the "Retention Class").

Excluded from the Retention Class are Time Warner and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

40.    Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All persons in the United States who signed up for cable service with Time Warner, and who were never issued annual written notices from Time Warner regarding Time Warner's retention or disclosure of their personally identifiable information (the "Notice Class").

Excluded from the Notice Class are Time Warner and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

1    41.    Plaintiff brings Counts III-V, as set forth below, on behalf of himself

2  and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of

3  the Federal Rules of Civil Procedure on behalf of a class defined as:

4              All persons residing in the State of California who signed
5              up for cable service with Time Warner, and whose
               personally identifiable information was retained by Time
6              Warner after the termination of services (the "California
7              State Class").

8  Excluded from the California State Class are Time Warner and its subsidiaries and

9  affiliates; all persons who make a timely election to be excluded from the Class;

10  governmental entities; and the judge to whom this case is assigned and any

11  immediate family members thereof.

12    42.    The Retention Class, Notice Class, and California State Class shall be

13  referred to collectively as "the Class" below unless otherwise specified.

14    43.    Certification of Plaintiff's claims for classwide treatment is

15  appropriate because Plaintiff can prove the elements of his claims on a classwide

16  basis using the same evidence as would be used to prove those elements in

17  individual actions alleging the same claims.

18    44.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The

19  members of the class are so numerous that individual joinder of all Class members

20  in impracticable. On information and belief, there are thousands of consumers who

21  have been affected by Time Warner's wrongful conduct. The precise number of

22  the Class members and their addresses is presenty unknown to Plaintiff, but may

23  be ascertained from Time Warner's books and records. Class members may be

24  notified of the pendency of this action by recognized, Court-approved notice

25  dissemination methods, which may include U.S. mail, electronic mail, Internet

26  postings, and/or published notice.

27

28

45.   **Commonality and Predominance – Federal   Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

     a. whether Time Warner engaged in the conduct as alleged herein;

     b. whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

     c. whether Plaintiff and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

46.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

47.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representatives of the Class because his interests do not conflict with the interests of the other Class members he seek to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

48.   **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Time Warner has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

49.    **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Time Warner, so it would be impracticable for Class members to individually seek redress from Time Warner's wrongful conduct. Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potentional for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.  CLAIMS ALLEGED
### COUNT I
**Failure to Destroy Personally Identifiable Information
Violation of § 551(e) of the Cable Communications Policy Act
(On Behalf of the Retention Class)**

50.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1-49 as though fully set forth herein.

51.    Time Warner is a "cable operator" as defined by CCPA because Time Warner provides "cable services," which is "the one-way transmission to subscribers of [ ] video programming, or [ ] other programming service; [and] subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service." 47 U.S.C. § 522(5) & (6).

52.     CCPA mandates, among other things, that a cable operator "destroy personally identifiable information if the information is no longer necessary for the purpose for which is was collected." 47 U.S.C. § 551(e).

53.     After Plaintiff's account and the accounts of each of the members of the Retention Class were terminated, Time Warner continued to maintain Plaintiffs' PII even though such information was no longer necessary to maintain for the purpose for which it was collected.

54.     The foregoing conduct violates 47 U.S.C. § 551(e).

55.     Plaintiff and the Retention Class have suffered injuries as a result of Time Warner's violation of 47 U.S.C. § 551. Time Warner's failure to destroy the PII of Plaintiff and the Retention Class, as required 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of their federally protected privacy rights. In addition, Time Warner's failure to comply with CCPA has deprived Plaintiff and the Retention Class of their ability to make informed decisions with respect to their privacy.

56.     Moreover, since Plaintiff and the Retention Class purchased cable services from Time Warner, and Time Warner was obligated to comply with CCPA, Time Warner's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiff and the Retention Class ascribe monetary value to their ability to control their PII, Plaintiff and the Retention Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

57.     Plaintiff's and the Retention Class' PII constitutes personal property. Time Warner's failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Retention Class of the opportunity to control that personal property for its

1   own financial gain.  Accordingly, Plaintiff and the Retention Class has sustained,

2   and continue to sustain, monetary and economic injuries as a direct and proximate

3   result of Time Warner's violation of 47 U.S.C. § 551.

4         58.    CCPA provides a private right of action to consumers who have been

5   aggrieved by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by

6   any act of a cable operator violating 47 U.S.C. § 551 may recover "actual damages

7   but not less than liquidated damages computed at the rate of $100 a day for each

8   day of violation or $1,000, whichever is higher." 47 U.S.C. § 551(f)(2)(A).

9         59.    In addition, any person aggrieved by any act of a cable operator

10  violating 47 U.S.C. § 551 may recover punitive damages and "reasonable

11  attorneys' fees and other litigation costs reasonably incurred." 47 U.S.C. §

12  551(f)(2)(B)&(C).

13        60.    Plaintiff, on behalf of himself and the Retention Class, therefore seeks

14  redress as provided by 47 U.S.C. § 551, including liquidated damages to the full

15  extent permitted by CCPA, punitive damages, and reasonable attorneys' fees and

16  other litigation costs.

17                            **COUNT II**
                    **Failure to Provide Adequate Notice**
18  **Violation of § 551(a) of the Cable Communications Policy Act**
                    **(On Behalf of the Notice Class)**
19

20        61.    Plaintiff incorporates by reference the allegations contained in

21  Paragraphs 1-49 as though fully set forth herein.

22        62.    After the termination of services, Time Warner continued to maintain

23  Plaintiff's PII and the PII of each of the members of the Notice Class.

24        63.    Plaintiff and each of the members of the Notice Class did not receive

25  a yearly privacy notice from Time Warner as required under CCPA.

26        64.    The foregoing conduct violates 47 U.S.C. § 551(a).

27

28

CLASS ACTION COMPLAINT

65.    Plaintiff and the Notice Class have suffered injuries as a result of Time Warner's violation of 47 U.S.C. § 551.  Time Warner's failure to issue annual notices under CCPA, as required by 47 U.S.C. § 551, constitutes injury in the form of a direct invasion of the federally protected privacy rights of Plaintiff and the Notice Class.  In addition, Time Warner's failure to comply with CCPA has deprived Plaintiff and the Notice Class of their ability to make informed decisions with respect to their privacy.

66.    Moreover, since Plaintiff and the Notice Class purchased cable services from Time Warner, and Time Warner was obligated to comply with CCPA, Time Warner's failure to issue the requisite annual notices deprived them of the full value of the services that they bargained and paid for.  Because Plaintiff and the Notice Class ascribe monetary value to their ability to control their PII, Plaintiff and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

67.    Plaintiff's and the Notice Class' PII constitutes personal property.  Time Warner's failure to comply with 47 U.S.C. § 551 has also deprived Plaintiff and the Notice Class of the opportunity to control that personal property for its own financial gain.  Accordingly, Plaintiff and the Notice Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of 47 U.S.C. § 551.

68.    CCPA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 551.  Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover "actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher."  47 U.S.C. § 551(f)(2)(A).

69.  In addition, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover punitive damages and "reasonable attorneys' fees and other litigation costs reasonably incurred." 47 U.S.C. § 551(f)(2)(B)&(C).

70.  Plaintiff, on behalf of himself and the Notice Class, therefore seeks redress as provided by 47 U.S.C. § 551, including liquidated damages to the full extent permitted by CCPA, punitive damages, and reasonable attorneys' fees and other litigation costs.

**COUNT III**
**Violation of the California Customer Records Act,**
**Cal.Civ.Code § 1798.80, *et seq.***
**(On Behalf of the California State Class)**

71.  Plaintiff adopts and incorporates by reference Paragraphs 1-49 of this Complaint as if fully set forth herein.

72.  The California Customer Records Act ("CCRA") provides, in pertinent part, that:

> A business shall take all reasonable steps to dispose, or arrange for the disposal, of customer records within its custody or control containing personal information when the records are no longer to be retained by the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal information in those records to make it unreadable or indecipherable through any means.

Cal.Civ.Code § 1798.81.

73.  Under the CCRA, "personal information" is defined as

> any information that identifies, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, social security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number,

insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information[.]

Cal.Civ.Code § 1798.80.

74. Plaintiff and the other members of the California State Class cancelled their subscription to, and no longer use, Time Warner's cable services. Therefore, Time Warner no longer has any reason to retain the sensitive personal information of Plaintiff and the California State Class. Nonetheless, Time Warner has continued to retain this personal information in its records.

75. In addition, on information and belief, Time Warner has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

76. Plaintiff and the California State Class have suffered injuries as a result of Time Warner's violation of the CCRA. Time Warner's failure to destroy their PII as required by the CCRA constitutes injury in the form of a direct invasion of their statutory rights. In addition, Time Warner's failure to comply with the CCRA has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

77. Moreover, since Plaintiff and the California State Class purchased cable services from Time Warner, and Time Warner was obligated to comply with the CCRA, Time Warner's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiff and the California State Class ascribe monetary value to their ability to control their PII, Plaintiff and the California State Class have sustained, and continue to sustain,

monetary and economic injuries as a direct and proximate result of Time Warner's violation of the CCRA.

78.    Plaintiff's and the California State Class' PII constitutes personal property.  Time Warner's failure to comply with the CCRA has also deprived Plaintiff and the California State Class of the opportunity to control that personal property for their own financial gain.  Accordingly, Plaintiff and the California State Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of the CCRA.

79.    The CCRA provides a private right of action to consumers.  Specifically, it states that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages."  Cal.Civ.Code § 1798.84(b).   In addition, the CCRA provides that "any business that violates, proposes to violate, or has violated this title may be enjoined." Cal.Civ.Code § 1798.84(e).

80.    Plaintiff, on his own behalf and on behalf of the other members of the California State Class, seeks judgment in her favor and against Time Warner, and awarding her and the other members of the California State Class injunctive relief and the maximum damages available under Cal.Civ.Code § 1798.84.

## COUNT IV
### Breach of Implied Contract
### (On Behalf of the California State Class)

81.    Plaintiff adopts and incorporates by reference paragraphs 1-60 and 71-80 of this Complaint as if fully set forth herein.

82.    Those who subscribed to Time Warner's cable service, including Plaintiff, were required by Time Warner to provide their social security number, address, phone number, and credit card and debit card information.

83.    In providing this personal data to Time Warner, Plaintiff and other members of the California State Class entered into an implied contract with Time

Warner (the "Contract"). Pursuant to the Contract, Time Warner became obligated to safeguard this data through all reasonable measures. This obligation includes complying with industry standards.

84.   The industry standard applicable to the credit-card transaction described above is set forth in Requirement 3.1 of the Data Security Standard (DSS) promulgated by the Payment Card Industry Security Standards Council. Specifically, that standard requires the merchants to implement the following security measures:

> Keep cardholder data storage to a minimum by implementing data retention and disposal policies, procedures and processes, as follows.
>
> Implement a data retention and disposal policy that includes:
> - Limiting data storage amount and retention time to that which is required for legal, regulatory, and business requirements
> - Processes for secure deletion of data when no longer needed
> - Specific retention requirements for cardholder data
> - A quarterly automatic or manual process for identifying and securely deleting stored cardholder data that exceeds defined retention requirements[.][13]

85.   Time Warner breached its Contract with consumers by failing to adopt and comply with the foregoing industry-standard practices, and by failing to destroy PII after the information is no longer necessary for the purpose for which it was collected.

86.   In addition, because the laws existing at the time and place of the making of the Contract are and were incorporated into the Contract, the Contract

---

[13] PCI Security Standards Council LLC, Navigating PCI DDS: Understanding the Intent of the Requirements, v2.0 (October 2010), p. 20.

1  included obligations for the parties to abide by all applicable laws, including
2  CCPA and the CCRA.

3      87.    Plaintiff and the California State Class performed their obligations
4  under the Contract by paying the consideration owed to Defendant for the
5  provision of cable service, and by complying with all applicable laws then in force.

6      88.    Time Warner's failure to perform its contractual obligations imposed
7  by CCPA and the CCRA – *i.e.*, the timely destruction of consumers' PII –
8  constitutes a material breach of the Contract.

9      89.    Plaintiff and the California State Class have suffered actual damages
10  as a result of Time Warner's breach in the form of the value Plaintiff and the
11  California State Class ascribe to the confidentiality and timely destruction of their
12  PII. This amount is tangible and can be calculated at trial.

13      90.    Further, a portion of the services purchased by Plaintiff and the
14  California State Class were intended to pay for Time Warner's costs in timely
15  destroying its customers' PII, as required by CCPA and the CCRA.

16      91.    Because Plaintiff and the California State Class were denied services
17  that they bargained and paid for and were entitled to receive—*i.e.*, confidentiality
18  of their PII and timely destruction of same—Plaintiff and the California State Class
19  incurred actual monetary damages in that they overpaid for the services they
20  bargained for.

21      92.    Accordingly, Plaintiff and the California State Class seek an order
22  declaring that Time Warner's conduct constitutes a breach of contract, and
23  awarding Plaintiff and the California State Class damages in an amount to be
24  calculated at trial.

25
26
27
28

## COUNT V
### Violation of Cal. Penal Code § 637.5
### (On Behalf of the California State Class)

93.   Plaintiff adopts and incorporates by reference Paragraphs 1-49 of this Complaint as if fully set forth herein.

94.   Section 637.5 of the California Penal Code provides in pertinent part:

> Individual subscriber viewing responses or other individually identifiable information derived from subscribers *may be retained and used by a satellite or cable television corporation only to the extent reasonably necessary for billing purposes and internal business practices, and to monitor for unauthorized reception of services.* A satellite or cable television corporation may compile, maintain, and distribute a list containing the names and addresses of its subscribers if the list contains no other individually identifiable information and if subscribers are afforded the right to elect not to be included on the list. However, a satellite or cable television corporation shall maintain adequate safeguards to ensure the physical security and confidentiality of the subscriber information.

Cal. Penal Code § 637.5(b) (emphasis added).

95.   If a cable operator violates the above section of the California Penal Code, the subscriber may assert a private right of action for invasion of privacy. Section 637.5 provides in pertinent part:

> Any aggrieved person may commence a civil action for damages for invasion of privacy against any satellite or cable television corporation, service provider, or person that leases a channel or channels on a satellite or cable television system that violates the provisions of this section.

Cal. Penal Code § 637.5(i) (the "California Penal Code").

96.    Plaintiff and the other members of the California State Class cancelled their subscription to, and no longer use, Time Warner's cable services. Therefore, their personal information is no longer reasonably necessary for billing or internal business purposes, or to monitor for unauthorized reception of services. As such, Time Warner's continued and indefinite retention of Plaintiff's and the Class members' personal information violates Cal. Penal Code § 637.5(b).

97.    In addition, on information and belief, Time Warner has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's and the California State Class' personal information so as to make it unreadable or undecipherable by others.

98.    Plaintiff and the California State Class have suffered injuries as a result of Time Warner's violation of the California Penal Code. Time Warner's failure to destroy their PII as required by the California Penal Code constitutes injury in the form of a direct invasion of their statutory rights. In addition, Time Warner's failure to comply with the California Penal Code has deprived Plaintiff and the California State Class of their ability to make informed decisions with respect to their privacy.

99.    Moreover, since Plaintiff and the California State Class purchased cable services from Time Warner, and Time Warner was obligated to comply with the California Penal Code, Time Warner's failure to destroy their PII deprived them of the full value of the services that they bargained and paid for. Because Plaintiff and the California State Class ascribe monetary value to their ability to control their PII, Plaintiff and the California State Class have sustained, and continue to sustain, monetary and economic injuries as a direct and proximate result of Time Warner's violation of the California Penal Code.

1    100.   Plaintiff's and the California State Class' PII  constitutes personal
2    property.   Time Warner's failure to comply with the CCRA has also deprived
3    Plaintiff and the California State Class of the opportunity to  control that personal
4    property for their own financial gain.  Accordingly, Plaintiff and the California
5    State Class have sustained, and continue to sustain, monetary and economic
6    injuries as a direct and proximate result of Time Warner's violation of the
7    California Penal Code.

8    101.   Plaintiff, on his own behalf and on behalf of the other members of the
9    California State Class, seeks judgment in her favor and against Time Warner, and
10   awarding him and the other members of the California State Class injunctive relief
11   and the maximum statutory damages available under California Penal Code.

## VII.  **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## VIII. **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter an Order awarding the following relief:

A. Declaring that this action may be maintained as a class action, and certifying the Classes as requested herein;

B. Enjoining Time Warner from the unlawful practices and statutory violations asserted herein;

C. An Order awarding liquidated damages pursuant to CCPA;

D. An Order awarding punitive damages pursuant to CCPA;

E. An Order awarding compensatory damages pursuant to the California statutes and common-law causes of action asserted herein;

F. An Order awarding attorneys' fees and costs pursuant to CCPA; and

G. Such other and further relief as may be just and proper.

Dated: August 3, 2012

Respectfully submitted,

TODD BURTON, individually and on behalf of all others similarly situated,

By: _____

One of the Attorneys for Plaintiff and the Proposed Putative Classes

Joseph J. Siprut*
jsiprut@siprut.com
James M. McClintick
jmcclintick@siprut.com
Aleksandra M. S. Vold
avold@siprut.com
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.588.1440
Fax: 312.427.1850

Todd C. Atkins
tatkins@siprut.com
SIPRUT PC
701 B Street, Suite 1170
San Diego, CA  92101
619. 255.2380
Fax: 619.231.4984

CLASS ACTION COMPLAINT

Jay Edelson*
*jedelson@edelson.com*
Ari J. Scharg*
*ascharg@edelson.com*
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370


*Pro hac vice* admittance to be sought

CLASS ACTION COMPLAINT

-27-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV12- 6764 JAK (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the **Magistrate Judge**

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[_] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[_] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[_] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Todd C. Atkins, SBN 208879
Siprut PC
701 B Street, Suite 1170
San Diego, CA  92101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| TODD BURTON, on behalf of himself and all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>TIME WARNER CABLE INC.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12-06764 JAK (AJWx)<br><br>**SUMMONS** |
|---|---|

TO:      DEFENDANT(S):

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Todd C. Atkins_____, whose address is _701 B Street, Suite 1170, San Diego, CA  92101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

AUG - 7 2012

Dated: _____

By: _____
        Deputy Clerk

        (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □)<br>TODD BURTON, on behalf of himself and all others similarly situated, | DEFENDANTS<br>TIME WARNER CABLE INC., |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Todd C. Atkins, Siprut PC, 701 B Street, Suite 1170, San Diego, CA 92101<br>619-255-2380 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant   □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify):   □ 6 Multi-District Litigation   □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes  □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  □ No          □ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
47 USC section 551, Unlawful Retention of Personal Identification Information

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 535 Death Penalty | |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| ☒ 490 Cable/Sat TV | | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 810 Selective Service | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 441 Voting | □ 610 Agriculture | □ 820 Copyrights |
| □ 850 Securities/Commodities/ Exchange | □ 160 Stockholders' Suits | □ 362 Personal Injury- Med Malpractice | □ 442 Employment | □ 620 Other Food & Drug | □ 830 Patent |
| □ 875 Customer Challenge 12 USC 3410 | □ 190 Other Contract | □ 365 Personal Injury- Product Liability | □ 443 Housing/Acco-mmodations | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 890 Other Statutory Actions | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | | SOCIAL SECURITY |
| □ 891 Agricultural Act | □ 196 Franchise | | □ 445 American with Disabilities - Employment | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 446 American with Disabilities - Other | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | □ 463 Habeas Corpus- Alien Detainee | □ 440 Other Civil Rights | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | □ 690 Other | □ 865 RSI (405(g)) |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| | □ 245 Tort Product Liability | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 290 All Other Real Property | | | | □ 871 IRS-Third Party 26 USC 7609 |

CV12-06764

**FOR OFFICE USE ONLY:**   Case Number:_____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles - Plaintiff Todd Burton | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York - Defendant Time Warner Cable, Inc. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date August 3, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |