1   BRYAN A. MERRYMAN (SBN 134357)
    bmerryman@whitecase.com
2   RACHEL J. FELDMAN (SBN 246394)
    rfeldman@whitecase.com
3   JONATHAN A. ALON (SBN 265102)
    jalon@whitecase.com
4   WHITE & CASE LLP
    633 W. Fifth Street, Suite 1900
5   Los Angeles, CA  90071-2007
    Telephone:   (213) 620-7700
6   Facsimile:   (213) 452-2329

7   Attorneys for Defendant
    TIME WARNER CABLE INC.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

13  TODD BURTON, on behalf of          No. CV12-06764 JAK (AJWx)
    himself and all others similarly
14  situated,                          **DEFENDANT TIME WARNER
                                        CABLE INC.'S MEMORANDUM OF
15               Plaintiff,             POINTS AND AUTHORITIES IN
                                        SUPPORT OF MOTION TO
16        v.                            DISMISS COMPLAINT**

17  TIME WARNER CABLE INC.,             Date:  January 7, 2013
                                        Time:  8:30 a.m.
18               Defendant.             Dept:  750 (Roybal Building)
                                        Judge:  Hon. John A. Kronstadt
19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................ 3

III.  THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFF LACKS STANDING ................... 5

IV.  THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM ...... 7

    A.    Plaintiff Fails to Allege an Injury Sufficient to Establish Statutory Standing ............................................................... 7

        1.    Plaintiff Has Not Been Aggrieved by an Alleged Act by TWC Under 47 U.S.C. § 551 ................................................... 7

        2.    Plaintiff Has Not Been Injured by an Alleged Act by TWC Under the CCRA or Section 637.5 of the Penal Code ............... 8

    B.    Each Claim Fails Under the *Twombly/Iqbal* Pleading Standard Due to Plaintiff's Conclusory and/or Implausible Allegations ..................... 9

        1.    Plaintiff's First, Third, Fourth and Fifth Claims All Fail Because They Rely On Conclusory and Implausible Allegations .............................................................. 10

        2.    Plaintiff's Second Claim for Violation of Section 551(a) Fails Because His Conclusory Allegations Do Not State a Claim .... 14

    C.    Plaintiff's Second, Third and Fourth Claims Fail as a Matter of Law For Additional Reasons ....................................................... 14

        1.    Plaintiff's Second Claim for Violation of Section 551(a) Fails Because the Statute Does Not Apply to Former Subscribers ... 15

        2.    Plaintiff's Third Claim for Violation of the CCRA Fails Because the Statute Does Not Apply to the Retention of PII ... 15

        3.    Plaintiff's Fourth Claim For Breach of Implied Contract Fails Because an Express Contract Governs the Same Subject Matter and Because He Does Not Allege Essential Elements of the Claim ............................................................. 16

V.    CONCLUSION ............................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ........................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................. passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................2, 9

*Boorstein v. Men's Journal LLC*,
No. CV 12-771 DSF, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ..................8

*Boorstein v. Men's Journal LLC*,
No. CV 12-771 DSF, 2012 WL 3791701 (C.D. Cal. Aug. 17, 2012) .................9

*Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.*,
111 Cal.App.4th 1127 (2003) ..........................................................17

*Div. of Labor Law Enforcement v. Transpacific Transp. Co.*,
69 Cal.App.3d 268 (1977) .............................................................17

*Doe 1 v. AOL LLC*,
719 F.Supp.2d 1102 (N.D. Cal. 2010) ............................................ 15, 16

*Doe v. Chao*,
540 U.S. 614 (2004) ....................................................................8

*Essex Ins. Co. v. Miles*,
Civ. Action No. 10-3598, 2010 WL 509871 (E.D. Pa. Dec. 3, 2010)...............12

*Friedman v. Friedman*,
20 Cal.App.4th 876 (1993) ............................................................17

*Grant v. Aurora Loan Servs., Inc.*,
736 F.Supp.2d 1257 (C.D. Cal. 2010) ................................................18

*Jones v. AIG Risk Mgmt., Inc.*,
726 F.Supp.2d 1049 (N.D. Cal. 2010) ................................................10

*Kemp v. Int'l Bus. Machs. Corp.*,
No. C-09-4683 MHP, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) .................12

*LaCourt v. Specific Media*,
No. SACV 10-1256-GW, 2011 WL 1661532 (C.D. Cal. April 28, 2011).......5, 6

*Low v. LinkedIn Corp.*,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ......................................6

ii

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................5

*Roots Ready Made Garments Co. v. Gap, Inc.,*
   405 Fed. App'x. 120 (9th Cir. 2010) ...............................................17

*SEC v. McCarthy,*
   322 F.3d 650 (9th Cir. 2003) ...........................................................15

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ......................................................9, 13

*Sterk v. RedBox Automated Retail, LLC,*
   672 F.3d 535 (7th Cir. 2012) ..............................................................8

*Toxic Injuries Corp. v. Safety-Kleen Corp.,*
   57 F.Supp.2d 947 (C.D. Cal. 1999) ...................................................6

*White v. Lee,*
   227 F.3d 1214 (9th Cir. 2000) ...........................................................5

**STATUTES**

5 U.S.C. § 552(a) ...............................................................................8

18 U.S.C. § 2710 ................................................................................8

18 U.S.C. § 2710(c)(1) .......................................................................8

47 U.S.C. § 551 ........................................................................... 4, 7, 8

47 U.S.C. § 551(a) ..................................................................... passim

47 U.S.C. § 551(a)(1) .......................................................................14

47 U.S.C. § 551(e) ..................................................................... passim

47 U.S.C. § 551(f) ...............................................................................7

47 U.S.C. § 551 (f)(1) .........................................................................6

Cal. Civ. Code § 1798.81 .......................................................1, 10, 11

Cal. Civ. Code § 1798.84(b) ..........................................................6, 8

Cal. Pen. Code § 637.2(a) ...............................................................7, 8

Cal. Pen. Code § 637.5 .............................................................. passim

Cal. Pen. Code § 637.5(b) .................................................................11

iii

## __RULES__

Fed. R. Civ. Proc. 8 ................................................................................ 9, 11, 12

Fed. R. Civ. Proc. 8(a)(2) .......................................................................... 9

Fed. R. Civ. Proc. 12(b) (1) ..................................................................... 3, 5

Fed. R. Civ. Proc. 12(B)(6) ........................................................................ 7, 9

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COMPLAINT

# MEMORANDUM OF POINTS AND AUHTORITIES

**I.**   **INTRODUCTION**

Not "Waiting for Godot," but "Waiting for Substance."  The complaint filed by Plaintiff Todd Burton ("Plaintiff"), a former Time Warner Cable Inc. ("TWC") subscriber, contains 101 paragraphs describing the importance of privacy and the laws that touch on this subject.  Yet, Plaintiff includes only one, short section of four paragraphs that purports to allege "Facts Pertaining to Plaintiff Burton."  The one actual fact he asserts within this section fails to state a claim.  The remaining "facts" so lack in substance that this case cannot be allowed to continue.

Plaintiff claims TWC maintained data relating to his personally identifiable information ("PII") after he terminated his service and TWC failed to send him a privacy notice after he terminated service.  The support for the first set of claims does not exist.  The second factual claim is based on Plaintiff's failure to receive a document, which is at least a fact he can actually allege, even if it fails to state a claim.

With regard to his allegation that TWC allegedly maintained his PII, Plaintiff asserts four claims.  Count I alleges TWC failed to destroy data relating to Plaintiff's PII in violation of section 551(e) ("Section 551(e)") of the Cable Communications Policy Act ("CCPA" or "Federal Cable Act").  Count III alleges TWC failed to destroy his data and by doing so violated the California Customer Records Act, Cal. Civ. Code § 1798.81 ("CCRA").  Count IV claims breach of an implied contract by failing to destroy data.  Count V is a repeat of Count I, but under California Penal Code section 637.5 ("Section 637.5").

Importantly, in support of these four claims, Plaintiff does not allege TWC misused, disclosed, or otherwise did anything improper with his PII.  All he alleges is TWC, as various laws allow it to do, maintained his PII after he terminated his service.  Yet, while the sole basis for his complaint is TWC improperly maintained his PII, Plaintiff does not identify the specific information TWC allegedly

1

LOSANGELES 962626

1  maintained, or how, when, and why TWC maintained such information. Moreover,

2  Plaintiff's allegations make clear he never investigated, or even asked TWC,

3  whether it actually maintained his PII. For this reason, Plaintiff alleges only "on

4  information and belief" that TWC wrongfully retained his PII – *i.e.*, the essential

5  element of each of his five claims. Plaintiff's bare and conclusory allegations fail

6  to state a claim.

7       The United States Supreme Court has made it very clear that gone are the

8  days when a plaintiff could file a complaint based on guesswork and hope to find an

9  actual problem in discovery. A "plaintiff armed with nothing more than

10  conclusions" cannot "unlock the doors of discovery" and unfairly subject a

11  defendant to its "potentially enormous expense." *Ashcroft v. Iqbal*, 556 U.S. 662,

12  678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Plaintiff's

13  first, third, fourth, and fifth claims fail under *Iqbal* and *Twombly* because he alleges

14  no actual facts.

15       The only claim actually based on a fact Plaintiff has some basis to allege

16  (*i.e.*, he did not receive privacy notices after terminating service) fails to state a

17  claim. Count II alleges that, after Plaintiff terminated service with TWC, it failed to

18  continue to send him annual privacy notices, purportedly in violation of section

19  551(a) ("Section 551(a)") of the CCPA. This claim fails because Section 551(a)

20  does not require that TWC send privacy notices to *former* customers.

21       Additionally, Plaintiff's entire complaint is deficient for lack of standing as

22  Plaintiff fails to allege any actual harm. Plaintiff's third claim fails because the

23  CCRA applies only to the method by which a business discards consumer

24  information. Finally, Plaintiff's fourth claim for breach of implied contract fails

25  because an express contract regarding the same subject matter already exists

26  between TWC and its subscribers, and, in any event, Plaintiff does not allege a

27  course of conduct by TWC sufficient to state a claim based on an implied contract.

28

2

1    As shown below, Plaintiff's complaint, although long on policy, is devoid of

2    facts stating a claim for relief.  The Court should, therefore, dismiss the complaint,

3    and each claim alleged therein, pursuant to Federal Rules of Civil Procedure

4    12(b)(1) and/or 12(b)(6).

5    **II.    STATEMENT OF FACTS**

6    TWC is a cable service provider.  Complaint ("Compl."), ¶ 1.  Plaintiff was a

7    TWC subscriber prior to terminating his service in December 2009.  Compl.,

8    ¶¶ 35-36.  The Time Warner Cable Residential Services Subscriber Agreement

9    ("Subscriber Agreement") governs the relationship between TWC and its

10   subscribers.  Request for Judicial Notice ("RJN"), Ex. A (Subscriber Agreement).

11   The Subscriber Agreement provides that a subscriber grants TWC "permission to

12   collect, use, or disclose [a subscriber's] personal information as described in our

13   Subscriber Privacy Notice."  RJN, Ex. A, §11(a).  Plaintiff's complaint quotes the

14   Subscriber Privacy Notice ("Privacy Notice"), in part, yet fails to attach either the

15   Subscriber Agreement or the Privacy Notice as an exhibit.  Compl., ¶ 21; RJN,

16   Ex. B (Privacy Notice).

17   Despite filing a 27-page, five-claim complaint, Plaintiff dedicates only four

18   paragraphs to the "Facts Pertaining to Plaintiff Burton."

19   - In August 2002, Plaintiff signed up for cable service with TWC and

20     provided it with information necessary to establish service.  Compl., ¶ 35.

21   - In December 2009, Plaintiff cancelled his service.  Compl., ¶ 36.

22   - "On information and belief, as of the date of this filing, Time Warner still

23     retains Burton's PII."  Compl., ¶ 37.

24   - Since Plaintiff terminated his service, he has not received TWC's annual

25     privacy notice.  Compl., ¶ 38.

26   What should be the key set of allegations in this complaint alleging the substance

27   behind Plaintiff's claims that TWC violated federal and state law and breached an

28   implied contract instead consists of a one sentence allegation based "on information

1    and belief."

2         Plaintiff's complete lack of foundation for this lawsuit is perhaps not

3    surprising when one looks at the broader background.  Plaintiff, who lives in the

4    Los Angeles area, originally filed this lawsuit in the Northern District of California,

5    a place where TWC does no business.  At the same time Plaintiff filed that

6    complaint, his attorneys filed almost identical complaints on behalf of other

7    plaintiffs against Comcast, another cable operator, and DirecTV, a satellite

8    provider.  *See* Request for Judicial Notice ("RJN"), Exs. C and D.[1]  Plaintiff's

9    counsel filed the three cases within minutes of each other and the clerk assigned

10   them consecutive docket numbers.  None of the three cases contains any real

11   substance behind the claim that "on information and belief" the cable/satellite

12   provider continues to maintain data about the plaintiffs.[2]

13        Plaintiff seeks to represent three classes.  First, as to his first claim for relief

14   for violation of Section 551(e) of the Federal Cable Act, he seeks to represent "All

15   persons in the United States who signed up for cable service with Time Warner, and

16   whose personally identifiable information was retained by Time Warner after the

17   termination of services (the "Retention Class")."  Compl., ¶ 39.

18        Second, as to his second claim for relief for violation of Section 551(a) of the

19   Federal Cable Act, he seeks to represent "All persons in the United States who

20   signed up for cable service with Time Warner, and who were never issued annual

21   written notices from Time Warner regarding Time Warner's retention or disclosure

22   of their personally identifiable information (the "Notice Class")."  Compl., ¶ 40.

23        Next, as to his third through fifth claims for relief for violation of the CCRA,

24   breach of implied contract, and violation of Section 637.5 of the Penal Code, he

25   seeks to represent "All persons residing in the State of California who signed up for

26   _____

27   [1] Section 551 of the Federal Cable Act does not apply to satellite providers so the
     plaintiffs in the DirecTV case cite the parallel federal satellite statute.

28   [2] Once TWC pointed out its complete lack of contacts with the Northern District,
     Plaintiff dismissed that lawsuit and filed this one.

4

1  cable service with Time Warner, and whose personally identifiable information was

2  retained by Time Warner after the termination of services (the "California State

3  Class")." Compl., ¶ 41.

4      Plaintiff's claims fail to establish a cognizable injury-in-fact sufficient to

5  establish standing.  Additionally, Plaintiff fails to state a claim for relief because his

6  claims are conclusory, implausible, and/or fail as a matter of law.  Thus, the Court

7  should dismiss the complaint.

8  **III.**  **THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO**

9        **RULE 12(b)(1) BECAUSE PLAINTIFF LACKS STANDING**

10      Plaintiff lacks standing because he has not suffered injury-in-fact.  Pursuant

11  to Article III of the Constitution, Plaintiff must demonstrate he has standing to sue

12  in federal court in order to establish the Court's subject matter jurisdiction over his

13  claims.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A challenge to standing

14  is raised properly by a motion to dismiss under Rule 12(b)(1).  *Id.*

15      To establish standing, Plaintiff must allege: (1) injury-in-fact; (2) causation;

16  and (3) redressability.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

17  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete

18  and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.*

19  at 560.  Plaintiff bears the burden of establishing the Court's subject matter

20  jurisdiction and his standing to sue.  *LaCourt v. Specific Media*, No. SACV 10-

21  1256-GW, 2011 WL 1661532, at *2 (C.D. Cal. April 28, 2011).

22      Here, Plaintiff ascribes a subjective, theoretical value to his PII without any

23  explanation for how TWC's alleged actions diminished such value.  Compl., ¶¶ 56,

24  66, 77, 89, 99.  Plaintiff does not allege TWC distributed his PII to a third party, or

25  TWC gained some economic benefit from its alleged retention and failure to

26  destroy his PII.  Nor does Plaintiff allege he would, or even could, utilize his PII for

27  his own financial gain, and he is now unable to do so as a result of TWC's alleged

28  practices.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN<br>SUPPORT OF MOTION TO DISMISS COMPLAINT

1    Rather, Plaintiff alleges merely that, by maintaining his PII, TWC deprived

2    Plaintiff of: (a) his ability to make informed decisions with respect to his privacy;

3    (b) the full value of the services he bargained and paid for; and (c) the opportunity

4    to control his personal property for his own financial gain. Compl., ¶¶ 55-57, 65-

5    67, 76-78, 91, 98-100. These speculative, conjectural, and abstract allegations are

6    insufficient to establish the requirement of injury-in-fact. *See, e.g., LaCourt*, 2011

7    WL 1661532, at *5 (no actual or imminent injury-in-fact because plaintiffs "do not

8    explain how they were 'deprived' of the economic value of their personal

9    information simply because their unspecified personal information was purportedly

10   collected"); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11,

11   2011) ("Plaintiff's allegation that his sensitive [personally identifiable] information

12   may be transmitted via his browser history is too theoretical to support injury-in-

13   fact for the purposes of Article III standing.").

14       Plaintiff further alleges TWC's practices include "the risk of identity theft

15   and conversion of personal financial accounts." Compl., ¶ 13. Plaintiff does not

16   allege he has been the victim of identity theft, or his personal information has been

17   compromised as a result of TWC's alleged actions. An alleged increased risk of

18   injury does not constitute injury-in-fact. *Toxic Injuries Corp. v. Safety-Kleen*

19   *Corp.*, 57 F.Supp.2d 947, 952 (C.D. Cal. 1999) (holding no concrete, particularized

20   injury, and, thus, no standing where individuals exposed to allegedly dangerous

21   chemicals had not been injured, but were merely at an increased risk of developing

22   injury in the future).

23       Importantly, Plaintiff cannot rely on TWC's alleged statutory violations to

24   overcome his Article III standing requirement. Each statutory claim alleged by

25   Plaintiff requires injury resulting from the statutory violation. 47 U.S.C. § 551

26   (f)(1) ("Any person <u>aggrieved</u> by any act of a cable operator in violation of this

27   section may bring a civil action in a United States district court.") (emphasis

28   added); Cal. Civ. Code § 1798.84(b) ("Any customer <u>injured</u> by a violation of this

6

1    title may institute a civil action to recover damages.") (emphasis added); Cal. Pen.

2    Code §637.2 (a) ("Any person who has been <u>injured</u> by a violation of this chapter

3    may bring an action against the person who committed the violation....") (emphasis

4    added).

5         For the reasons discussed above, Plaintiff cannot establish the requisite injury

6    to maintain his claims.  Thus, Plaintiff cannot meet his burden, and the Court

7    should dismiss his complaint in its entirety for failure to allege injury-in-fact for

8    purposes of Article III standing.

9    **IV.**    <u>**THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO**</u>

10    <u>**RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM**</u>

11         Even if Plaintiff has standing (and he does not), his complaint still fails to

12    state a claim for relief as a matter of law.  First, a necessary element of Plaintiff's

13    claims is injury.  For the same reasons he cannot establish Article III standing,

14    Plaintiff also cannot meet the injury requirement of his claims.  Second, Plaintiff

15    bases his complaint solely on conclusory, implausible allegations that do not meet

16    the standards of *Iqbal/Twombly*.  Finally, Plaintiff's second, third and fourth claims

17    for relief fail as a matter of law for the additional reasons discussed below.

18         **A.**    <u>**Plaintiff Fails to Allege an Injury Sufficient to Establish Statutory**</u>

19    <u>**Standing**</u>

20         In addition to Article III standing, which Plaintiff lacks, he must allege

21    statutory standing for his first, second, third, and fifth claims for relief.  As stated in

22    Section III above, each statutory claim requires Plaintiff to demonstrate an injury

23    resulting from the alleged statutory violation.

24         **1.**    <u>Plaintiff Has Not Been Aggrieved by an Alleged Act by TWC</u>

25    <u>Under 47 U.S.C. § 551</u>

26         In order to maintain a claim for a violation of 47 U.S.C. § 551, Plaintiff must

27    establish he has been "aggrieved by any act of [TWC] in violation of this section."

28    47 U.S.C. § 551(f).  Plaintiff's first and second claims for violations of Section

7

1     551(e) and Section 551(a) of the CCPA, respectively, fail to do so.  Because no

2     controlling authority exists addressing what is meant by a "person aggrieved" under

3     this statute, cases addressing statutes using similar language to confer private rights

4     of action are instructive.

5         For example, the court in *Sterk v. RedBox Automated Retail, LLC*, 672 F.3d

6     535 (7th Cir. 2012), addressed statutory standing under the Video Privacy

7     Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA").  The VPPA uses the same

8     language of "any person aggrieved" to confer a private right of action.  18 U.S.C. §

9     2710(c)(1).  The *Sterk* court held plaintiffs do not suffer actual injury until their

10    personal information is disclosed.  *Sterk*, 672 F.3d at 538 ("How could there be

11    injury, unless the information, not having been destroyed, were disclosed?").  If the

12    information "remained secreted in the video service provider's files until it was

13    destroyed, there would be no injury." *Id.* at 538-39; *see also Doe v. Chao*, 540 U.S.

14    614, 620 (2004) (finding no standing under Privacy Act, 5 U.S.C. § 552a, even

15    though plaintiffs' PII was disclosed because statute did not allow recovery without

16    actual damages).

17        Similarly, here, as stated above, because Plaintiff does not allege TWC

18    disclosed or misused his PII, or TWC harmed him in a tangible way, the Court

19    should dismiss Plaintiff's first and second claims for relief under Section 551.

20            2.    <u>Plaintiff Has Not Been Injured by an Alleged Act by TWC</u>

21                <u>Under the CCRA or Section 637.5 of the Penal Code</u>

22        Statutory standing is also required under the CCRA (Count III) and Section

23    637.5 (Count V), which both provide a private right of action to a person "injured

24    by a violation" of the statute.  Cal. Civ. Code § 1798.84(b); Cal. Pen. Code

25    § 637.2(a).  Plaintiff cannot maintain a claim under the CCRA, for example, "based

26    solely upon a failure to comply with the statute.  Rather, § 1798.84(b) expressly

27    requires an *injury* resulting from a violation.  Thus, a violation of the statute,

28    without more, is insufficient." *Boorstein v. Men's Journal LLC*, No. CV 12-771

8

1    DSF, 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012) (emphasis added);

2    *Boorstein v. Men's Journal LLC*, No. CV 12-771 DSF, 2012 WL 3791701, at *1

3    (C.D. Cal. Aug. 17, 2012) (requiring statutory injury for standing "to sue for civil

4    penalties and injunctive relief").  Given the parallel language of the statutes, the

5    analysis applies equally to Section 637.5.  Again, Plaintiff cannot show an injury

6    resulting from TWC's alleged retention of, and failure to destroy, Plaintiff's PII.

7    Plaintiff's third and fifth claims for relief must therefore be dismissed.

8          B.       **Each Claim Fails Under the *Twombly/Iqbal* Pleading Standard**

9                   **Due to Plaintiff's Conclusory and/or Implausible Allegations**

10         Federal Rule of Civil Procedure 8 requires a complaint contain "a short and

11   plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

12   Civ. Proc. 8(a)(2).  If a complaint fails to meet that requirement, it must be

13   dismissed pursuant to Rule 12(b)(6) for failure "to state a claim upon which relief

14   may be granted." Fed. R. Civ. Proc. 12(b)(6).

15         To determine whether a complaint states a claim under the requirements of

16   Rules 8 and 12(b)(6), the Court must undertake a two-step analysis.  First, the Court

17   must disregard conclusory allegations and bare recitations of the elements of a

18   claim; a "plaintiff armed with nothing more than conclusions" or "naked assertions

19   devoid of further factual enhancement" cannot "unlock the doors of discovery."

20   *Iqbal*, 556 U.S. at 678-79 (internal quotations and punctuation omitted); *Twombly*,

21   550 U.S. at 555.

22         Second, the Court must determine whether the well pleaded factual

23   allegations state a claim that is "plausible," as opposed to merely "possible." *Iqbal*,

24   556 U.S. at 679; *Twombly*, 550 U.S. at 556, 570.  The factual allegations taken as

25   true must plausibly suggest entitlement to relief, "such that it is not unfair to require

26   the opposing party to be subjected to the expense of discovery and continued

27   litigation." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

28

9

1   Plausibility is context specific and requires the "court to draw on its judicial

2   experience and common sense." *Iqbal*, 556 U.S. at 679.  One factor the court may

3   consider in determining facial plausibility is the potential burden on the defendant

4   if the motion to dismiss is denied.  *Jones v. AIG Risk Mgmt., Inc.*, 726 F.Supp.2d

5   1049, 1059 (N.D. Cal. 2010).  "[A]n implicit rationale of [*Twombly*] and *Iqbal* is

6   'that a defendant should not be forced to undergo costly discovery unless the

7   complaint contains enough detail, factual or argumentative, to indicate that the

8   plaintiff has a substantial case.'"  *Id.* (citing *Limestone Dev. Corp. v. Vill. of

9   Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008).

10                    1.    Plaintiff's First, Third, Fourth and Fifth Claims All Fail Because

11                          They Rely On Conclusory and Implausible Allegations

12       The complaint asserts only conclusory, implausible allegations in support of

13   each claim.  Plaintiff's first claim (violation of Section 551(e)), third claim

14   (violation of the CCRA), fourth claim (breach of implied contract), and fifth claim

15   (violation of Section 637.5), all relate to TWC purportedly continuing to maintain,

16   and not destroy, Plaintiff's PII.  Importantly, each statute provides that a cable

17   operator or business should take reasonable steps to destroy or dispose of

18   consumer records containing PII if such information is no longer necessary for

19   business purposes.[3]  Moreover, Plaintiff claims TWC breached an implied

20

21   [3] Section 551(e) of the CCPA (Federal Cable Act) provides: "A cable operator shall
22   destroy personally identifiable information if the information is no longer necessary
     for the purpose for which it was collected and there are no pending requests or
23   orders for access to such information under subsection (d) of this section or
     pursuant to a court order."  47 U.S.C. § 551(e).
24

25   The CCRA provides:  "A business shall take all reasonable steps to dispose, or
     arrange for the disposal, of consumer records within its custody or control
26   containing personal information when the records are no longer to be retained by
     the business by (a) shredding, (b) erasing, or (c) otherwise modifying the personal
27   information in those records to make it unreadable or indecipherable through any
28   means."  Cal. Civ. Code § 1798.81.

                                                    10

1    contract by "failing to destroy PII after the information is no longer necessary for

2    the purpose for which it was collected." Compl., ¶ 85.

3         Plaintiff alleges TWC violated Section 551(e), the CCRA, and Section 637.5,

4    and breached an implied contract, because, after Plaintiff closed his account, "Time

5    Warner continued to maintain Plaintiff's PII even though such information was no

6    longer necessary to maintain for the purpose for which it was collected." Compl.,

7    ¶¶ 53-54.  Plaintiff also alleges that because Plaintiff no longer uses TWC's

8    services, TWC "no longer has any reason to retain" his PII and, specifically, his

9    "personal information is no longer necessary for billing or internal business

10   purposes, or to monitor for unauthorized reception of services." Compl., ¶¶ 74, 96.

11   Plaintiff's allegations are nothing more than a conclusory, bare recitation of the

12   elements of the claims.  Pleading under Rule 8, however, "demands more than an

13   unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at

14   678.

15        First, Plaintiff does not allege what, if any, information about Plaintiff TWC

16   retained in its records.  Absent such allegations, Plaintiff does not state claims for

17   violation of Section 551(e), the CCRA, or Section 637.5, which prohibit only the

18   retention of "personally identifiable information," "personal information," and

19   "individually identifiable information," respectively.  47 U.S.C. § 551(e); Cal. Civ.

20   Code § 1798.81; Cal. Pen. Code § 637.5(b).  Nor can Plaintiff assert a claim that

21   TWC breached its implied agreement to destroy his PII, if he has not adequately

22   pleaded that TWC did in fact maintain his PII.  Compl., ¶ 85.

23        Second, in addition to Plaintiff's failure to provide any factual support for his

24

25   Section 637.5 provides, in relevant part: "[I]ndividually identifiable information
     derived from subscribers may be retained by a satellite or cable television
26   corporation only to the extent reasonably necessary for billing purposes and internal
     business practices....  However, a satellite or cable television corporation shall
27   maintain adequate safeguards to ensure the physical security and confidentiality of
     the subscriber information." Cal. Pen. Code § 637.5(b).
28
                                              11

allegations that "[o]n information and belief, as of the date of this filing, Time Warner still retains Burton's PII" (Compl., ¶ 37), he does not provide factual support for his allegation, on information and belief, that TWC "has not taken a single step toward shredding, erasing, encrypting, or otherwise modifying Plaintiff's ... personal information so as to make it unreadable or undecipherable by others." Compl., ¶¶ 75, 97. These conclusory allegations, made on "information and belief," are insufficient under Rule 8 without supporting, well pleaded factual allegations. *Kemp v. Int'l Bus. Machs. Corp.*, No. C-09-4683 MHP, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010); *see also Essex Ins. Co. v. Miles*, Civ. Action No. 10-3598, 2010 WL 509871, at *3 (E.D. Pa. Dec. 3, 2010) ("Reliance by [Plaintiff] on information and belief cannot transform legal conclusions into plausible factual allegations.").

In *Kemp*, the plaintiff alleged IBM's internal recordkeeping violated California's Labor Code, which required employers to maintain payroll records at a central location or at the location of employment. *Kemp*, 2010 WL 4698490, at *3-4. The plaintiff simply asserted IBM refused to maintain such records. *Id.* at *4. The plaintiff's bare allegation in support of this assertion was that he was unable to obtain payroll records, and "[u]pon information and belief, no such centralized records exist...." The court held this "highly speculative" allegation was insufficient. *Id.* at *4. The court noted:

> It may be true that information regarding IBM's record-keeping is uniquely within IBM's control, but Kemp must nonetheless provide some reasonable basis for concluding that IBM is not in conformity with the Labor Code.
>
> For example, Kemp does not allege that he ever requested employment records from IBM or that he undertook any good faith investigation into the existence of those records. Kemp cannot "unlock the doors of discovery" regarding IBM's record-keeping without providing some specific facts that would assure the court that there is some plausible basis for liability.

*Id.* at *4.

1    Here, Plaintiff neither alleges that he undertook a good faith investigation

2  into the existence of TWC's alleged retention of his PII, nor that he requested

3  access to any PII TWC may have.  As in *Kemp*, Plaintiff cannot "unlock the doors

4  of discovery" regarding TWC's recordkeeping without providing specific facts to

5  assure this Court some plausible basis exists for liability.

6    Finally, although it is an essential element of his first, fourth, and fifth claims

7  for relief, Plaintiff does not make any plausible allegations as to why TWC no

8  longer needed to retain his PII.  Plaintiff alleges the <u>only</u> purpose for collecting PII

9  is to "provide service and collect payment," which he further alleges is unnecessary

10  once a consumer terminates his service.  Compl., ¶ 2.  The Court should disregard

11  this implausible allegation.

12    While individually identifiable information may no longer be necessary for

13  billing purposes once a subscriber cancels his/her service (assuming the subscriber

14  paid the account in full, which Plaintiff does not allege), Plaintiff ignores an

15  obvious explanation for why TWC may maintain subscriber information after

16  termination of service.  An inference of liability is not plausible when the

17  allegations of the complaint give rise to an "obvious alternative explanation" of

18  legality that renders a plaintiff's explanation implausible.  *Iqbal*, 556 U.S. at 682

19  (citing *Twombly*, 550 U.S. at 567); *Starr*, 652 F.3d at 1216.  Plaintiff's own citation

20  to TWC's online Privacy Notice provides precisely such an obvious alternative

21  explanation, as it informs customers that TWC may maintain PII after the customer

22  terminates service as necessary for business purposes, such as complying with "tax,

23  accounting, and other legal requirements."  Compl., ¶ 21.

24    Drawing on its "judicial experience and common sense" (*see Iqbal*, 556 U.S.

25  at 679), the Court should conclude that it would be implausible for a company to

26  delete certain customer information immediately upon termination of service, and

27  not maintain that information for necessary and legally mandated time periods

28  required for purposes of complying with tax, accounting, or legal obligations.

13

1   Plaintiff, therefore, fails to plead facts sufficient to support a plausible legal claim

2   as these obvious alternative explanations render Plaintiff's claims implausible.

3   Because Plaintiff asserts only conclusory and implausible allegations in support of

4   his first, third, fourth and fifth claims for relief, the Court should dismiss those

5   claims for failure to state a claim for relief.

6           2.    Plaintiff's Second Claim for Violation of Section 551(a) Fails

7                 Because His Conclusory Allegations Do Not State a Claim

8         Section 551(a) requires a cable operator to provide "[n]otice to subscriber[s]

9   regarding personally identifiable information." 47 U.S.C. § 551(a). Specifically,

10   Section 551(a)(1) requires: "At the time of entering into an agreement to provide

11   any cable service or other service to a subscriber and at least one year thereafter, a

12   cable operator shall provide notice in the form of a separate, written statement to

13   such subscriber which clearly and conspicuously informs the subscriber of" the five

14   items of information identified in subsections (A) through (E) of Section 551(a)(1).

15   *Id.*

16         Plaintiff's only allegations in support of his claim for violation of Section

17   551(a) are, "[a]fter termination of services, Time Warner continued to maintain

18   Plaintiff's PII" and Plaintiff "did not receive a yearly privacy notice." Compl.,

19   ¶¶ 62-63. Plaintiff's second claim for relief fails for the same reasons his first,

20   third, and fifth claims fail. Plaintiff does not allege the specific information TWC

21   allegedly retained; thus, for all Plaintiff knows, Plaintiff has not received a yearly

22   privacy notice because TWC no longer has any of Plaintiff's PII. In other words,

23   absent allegations sufficiently supporting that TWC maintained Plaintiff's PII, his

24   claim that he did not receive a privacy notice necessarily fails.

25       C.   **Plaintiff's Second, Third and Fourth Claims Fail as a Matter of**

26           **Law For Additional Reasons**

27         Plaintiff's second claim for violation of Section 551(a) of the Federal Cable

28   Act fails because that statute does not apply to former subscribers. Plaintiff's third

14

1    claim for violation of the CCRA fails because the statute does not apply to the

2    retention of PII.  Plaintiff's fourth claim for breach of implied contract fails because

3    an express contract between TWC and its subscribers governs the same subject

4    matter and, regardless, Plaintiff fails to allege the essential elements of this claim.

5    As explained below, each claim should also be dismissed for these reasons.

6                    1.    Plaintiff's Second Claim for Violation of Section 551(a) Fails

7                          Because the Statute Does Not Apply to Former Subscribers

8          Plaintiff's second claim for violation of Section 551(a) also fails because

9    Section 551(a) does not apply to former subscribers.  "The plain meaning of a

10   statute is always controlling unless that meaning would lead to absurd results."

11   *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (internal quotations omitted).

12   The statute specifically refers to and only requires notice to "subscribers."  47

13   U.S.C. § 551(a).  By definition, a "subscriber" is someone who "pays a monthly

14   charge to be connected to a television cable service."  COLLINS ENGLISH

15   DICTIONARY – COMPLETE & UNABRIDGED 10th Ed. (HarperCollins Publishers),

16   *available at* http://dictionary.reference.com/browse/subscriber (last accessed

17   August 24, 2012).  A consumer that terminates cable service is no longer a

18   subscriber.[4]  Because this section does not apply to former subscribers such as

19   Plaintiff, the Court should dismiss Plaintiff's second claim for relief.

20                   2.    Plaintiff's Third Claim for Violation of the CCRA Fails Because

21                         the Statute Does Not Apply to the Retention of PII

22         Plaintiff fails to state a claim under the CCRA.  The CCRA "applies only to

23   situations where a business intends to discard records containing personal

24   information."  *Doe 1 v. AOL LLC*, 719 F.Supp.2d 1102, 1114 (N.D. Cal. 2010).

25         In *AOL*, members of AOL filed a putative class action after AOL

26

27   _____

28   [4] The absurdity of this claim is highlighted by Plaintiff's lawsuit.  First, he says a
     cable operator must destroy all data about a customer.  Then, he says it has a
     continuing obligation (forever) to maintain data about former subscribers and their
     new addresses so it can send them privacy notices for the rest of their lives.

15

1    inadvertently posted "sensitive information regarding its members" on its website

2    for public download. *Id.* at 1105. The complaint alleged seven claims for relief,

3    including violation of the CCRA. *Id.* at 1105-06. The court analyzed the

4    legislative history of the statute, finding the legislature enacted it to regulate "the

5    disposal by businesses of records containing the personal information of customers

6    in order to prevent identity theft" through means such as "dumpster diving." *Id.* at

7    1114 (internal quotations omitted). The court, therefore, dismissed the plaintiffs'

8    claim as inapplicable, despite the disclosure, because "the disclosure of personal

9    information did not result in the course of the business's disposal of customer

10   records." *Id.*

11       Here, Plaintiff does not allege TWC intended to discard records containing

12   personal information. On the contrary, Plaintiff pleads himself out of a claim under

13   this statute by alleging "Time Warner has <u>continued to retain this personal</u>

14   <u>information</u> in its records." Compl., ¶ 74 (emphasis added). Plaintiff's claim under

15   the CCRA necessarily fails.

16       3.   <u>Plaintiff's Fourth Claim For Breach of Implied Contract Fails</u>

17            <u>Because an Express Contract Governs the Same Subject Matter</u>

18            <u>and Because He Does Not Allege Essential Elements of the</u>

19            <u>Claim</u>

20       Plaintiff asserts a defective implied contract claim in an attempt to impose

21   unwarranted obligations upon TWC. Plaintiff alleges that, by providing personal

22   information to TWC, Plaintiff and TWC entered into an implied contract whereby

23   TWC assumed the obligation to "safeguard this data through all reasonable

24   measures." Compl., ¶ 83. No such implied contract exists. Rather, an express

25   contract governs TWC's obligations with regard to subscriber data.

26       Plaintiff premises his alleged implied contract on subject matter expressly

27   covered in the Subscriber Agreement, *i.e.*, the express contract that governs the

28   services every subscriber receives from TWC. RJN, Ex. A (Subscriber

16

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COMPLAINT

1   Agreement).  An "action based on implied-in-fact or quasi-contract cannot lie

2   where there exists between the parties a valid express contract covering the same

3   subject matter."  *Roots Ready Made Garments Co. v. Gap, Inc.*, 405 Fed. App'x.

4   120, 123 (9th Cir. 2010).

5          Section 11 of the Subscriber Agreement governs the collection, use and

6   disclosure of a subscriber's personal information.  RJN, Ex. A, §11.  "You grant us

7   permission to collect, use or disclose your personal information as described in our

8   Subscriber Privacy Notice."  *Id.* at §11(a).  The Privacy Notice provides "This

9   Notice describes our practices with respect to your 'personally identifiable

10  information'" (RJN, Ex. B, p. 1), and includes sections on the "Collection and Use

11  of Personally Identifiable Information" (*Id.* at § 1), as well as the "Time Period

12  That We Retain Personally Identifiable Information" (*Id.* at § 4).  *See* RJN, Ex. B

13  (Privacy Notice).  Thus, the Subscriber Agreement and the Privacy Notice cover the

14  same subject matter as the alleged implied contract; namely, the retention of a

15  subscriber's personal information.  Plaintiff's implied contract claim necessarily

16  fails.

17         Regardless, Plaintiff fails to sufficiently plead essential elements of his fourth

18  claim.  The elements of an implied contract are the same as for an express contract.

19  *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal.App.3d 268,

20  275 (1977).  For instance, "a breach of contract claim requires a showing of

21  appreciable and actual damage," which, as discussed in section III above, Plaintiff

22  fails to allege.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th

23  Cir. 2000).  Moreover, an "implied contract consists of obligations arising from a

24  mutual agreement and *intent to promise*," whereby "the existence and terms of

25  which are manifested by conduct."  *Id.* (emphasis in original); *Friedman v.*

26  *Friedman*, 20 Cal.App.4th 876, 888 (1993).  To plead an "implied contract, the

27  facts from which the promise is implied must be alleged."  *Cal. Emergency*

28  *Physicians Med. Grp. v. PacifiCare of Cal.*, 111 Cal.App.4th 1127, 1134 (2003)

17

1    (internal quotations omitted).

2        Plaintiff does not allege a course of conduct by TWC which implies an intent

3    to promise to "safeguard this data" or comply "with industry standards."[5]  Compl.,

4    ¶¶ 83, 85.  Instead, Plaintiff asserts an absence of such conduct, alleging TWC

5    "fail[ed] to adopt and comply with the foregoing industry-standard practices."

6    Compl., ¶ 85.  Regardless, "evidence of custom and usage may be introduced to

7    interpret, explain, or supplement a contract, [but] it may not be used to create one

8    where none exists ... until some contract between the parties is shown, usage has no

9    effect and is immaterial in establishing contract liability."  *Grant v. Aurora Loan*

10   *Servs., Inc.*, 736 F.Supp.2d 1257, 1267 (C.D. Cal. 2010) (dismissing claim for

11   implied contract based on industry custom).  Simply put, Plaintiff cannot premise

12   his breach of implied contract theory on TWC's alleged failure to "adopt and

13   comply with" industry standard practices.  The Court should dismiss Plaintiff's

14   fourth claim for relief for breach of implied contract.

15   **V.    CONCLUSION**

16       For the foregoing reasons, the Court should grant TWC's motion to dismiss

17   the complaint without leave to amend.

18

19   Dated:  September 17, 2012           WHITE & CASE LLP

20

21                           By:  */s/Bryan A. Merryman*

                              Bryan A. Merryman

22

                        Attorneys for Defendant

23                           TIME WARNER CABLE INC.

24

25

26   ────────────────────

27   [5] In fact, Plaintiff cannot allege an implied contract through a course of conduct because the Subscriber Agreement provides it is the "entire agreement" between the parties, and the customer is "not entitled to rely on any agreements or undertakings

28   made by TWC personnel other than those contained in the Customer Agreements." RJN, Ex. A, § 20(a).

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS COMPLAINT