Joseph J. Siprut*
*jsiprut@siprut.com*
Aleksandra M.S. Vold*
*avold@siprut.com*
SIPRUT PC
17 North State Street, Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.947.9196

Todd C. Atkins
*tatkins@siprut.com*
SIPRUT PC
701 B Street, Suite 1170
San Diego, California 92101
619.255.2380
Fax: 619.231.4984

(Additional Plaintiff's Counsel listed in signature block)

*Pro hac vice* admittance to be sought

*Attorneys for Plaintiffs and the Putative Classes*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD BURTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC.,<br><br>Defendant. | Case No.  12-CV-6764-JAK-AJWx<br><br>**PLAINTIFF'S OPPOSITION TO TIME WARNER'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>Date: January 7, 2012<br>Time: 8:30 a.m.<br>Dept: 750 (Roybal Building)<br>Judge: Hon. John A. Kronstadt |

## Table of Contents

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 3

I.     **Plaintiff Has Article III Standing Because Time Warner Violated His Statutory Rights and Caused Him Harm** ............................................. 4

    **A. Time Warner's Violation of Plaintiff's Statutory Rights Under the Cable Act Gives Plaintiff Standing to Sue** ............................................ 5

    **B. Time Warner's Own Cited Cases Defeat Its Arguments** ..................... 7

    **C. Plaintiff Also Has Standing Because Time Warner's Failure to Comply with the Cable Act, CCRA, and CLRA Caused Plaintiff Economic Harm** ........................................................................................ 8

II.    **The Cable Act Provides an Express Right of Action For Violation of its Unlawful Retention Provision** ................................................................ 11

    **A. Time Warner's Statutory Standing Arguments are Directly Contrary to *Redbox* and Other Relevant Decisions** ........................................... 12

    **B. Time Warner Is Not At Liberty To Violate the Cable Act Whenever Customers Cancel Their Service** ......................................................... 16

III.   **Plaintiff Has Adequately Pled His Unlawful Retention Claim** ............... 17

IV.   **The CCRA Prohibits the Retention of PII** ........................................... 20

CONCLUSION ................................................................................................ 22

## Table of Authorities

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................................3, 4

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438 (2001).......................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544(2007)......................................................4,

*Conn. Nat. Bank v. Germain*, 503  U.S. 349 (1992)................................................12

*Doe v. Chao,* 540 U.S. 614 (2004)............................................................14, 15, 16

*Duncan v. Walker,* 533 U.S. 167 (2001) ...............................................................12

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)...............................................5

*Mass v. E.P.A.*, 549 U.S. 497 (2007) .................................................................4, 5

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .....................................................8, 14

*Warth v. Seldin,* 422 U.S. 490 (1975)................................................................5, 6

**United States Circuit Court of Appeals Cases:**

*Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010) ...................................5, 6

*Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614 (9th Cir. 2008) .........................................................................................................4, 5, 6

*Hauk v. JP Morgan Chase Bank United States,* 552 F.3d 1114 (9th Cir. 2009) ......17

*Howard v. Am. Online Inc.,* 208 F.3d 741 (9th Cir. 2000) ....................................11

*Klimas v. Comcast Cable Comms., Inc.*, 465 F. 3d 271 (6th Cir. 2006) ...................6

*N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578 (9th Cir. 1983) .....................3

*Preminger v. Peake*, 552 F.3d 757 (9th Cir. 2008)................................................4

*Resnick v. Avmed, Inc.*, 2012 WL 3833035 (11th Cir. Sept. 5, 2012)...................8, 9

*Scanlan v. Eisenberg*, 669 F.3d 838 (7th Cir. 2012) ............................................4

*Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) ............................................4

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .13, 14, 15, 16

**United States District Cases:**

*Boorstein v. Men's Journal LLC*, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ......................................................................... 10, 11

*Cancel v. City of Chicago*, 254 F.R.D. 501 (N.D. Ill. 2008).....................................5

*Consumer Solutions REO, LLC v. Hillery*, 2010 WL 1222739 (N.D. Cal. Mar. 24, 2010) ..............................................................................................17

*Daghlian v. DeVry Univ., Inc.,* 461 F. Supp. 2d 1121 (C.D. Cal. 2006) ...................8

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010).........................8, 9, 21

*Essex Ins. Co. v. Miles,* 2010 WL 509871 (E.D. Pa. Dec. 3 2010) .........................19

*Frezza v. Google Inc.*, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012)...................22

*Gaos v. Google, Inc.*, 2012 WL 109446 (N.D. Cal. Mar. 29, 2012) ........................7

*In re Facebook Privacy Litg.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................8, 9

*In re Hulu Privacy Litig.,* 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ..............19

*Kemp v. Int'l Bus. Machs. Corp.,* 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) .....18

*LaCourt v. Specific Media,* 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ...........7, 8

*Low v. LinkedIn Corp.*, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011). ...................7

*Low v. LinkedIn Corp.*, 2012 WL 2873847 (N.D. Cal. July 12, 2012) ....................7

*Lynx Ventures LP v. Canadian Imperial Bank of Commerce*, 2000 WL 33223384 (C.D. Cal. Apr. 18, 2000)...........................................................................3

*Metrovision of Livonia, Inc. v. Wood*, 864 F. Supp. 675 (E.D. Mich. 1994)...........15

*Sterk v. Redbox Automated Retail, LLC*, 2012 WL 3006674 (N.D. Ill. July 23, 2012) ...............................................................................................6, 16

*Warner v. Am. Cablevision of Kansas City, Inc.*, 699 F. Supp. 851 (D. Kan. 1988) ...........................................................................6, 13, 15

**State Court Cases**

*Hill v. National Collegiate Athletic Association*, 7 Cal.4th 1 (1994) ......................21

*Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360 (2007)............21

**Statutes**

47 U.S.C. § 551(a)(1)..................................................................................2

47 U.S.C. § 551(e) ...........................................................................passim

47 U.S.C. 551(f) .......................................................................................13

47 U.S.C. 551(f)(1) ..................................................................................6, 12

47 U.S.C. 551(f)(2) ........................................................................................15

Cal. Civ. Code § 1798.81 ....................................................................17, 20, 21

Cal. Civ. Code § 1798.81.5 ............................................................................21

Cal. Pen. Code § 637.5(b) ......................................................................17, 19

Fed. R. Civ. P. 8 ..............................................................................................4

**<u>Miscellaneous</u>**

Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881 (1983) .......................................5

BLACK'S LAW DICTIONARY at 1232 (9th ed. 2009).................................................12

# **INTRODUCTION**

This case challenges Time Warner's long-standing practice of retaining sensitive and personal customer information indefinitely, long after consumers have cancelled their accounts. This behavior concerned Congress enough that federal legislation has been enacted specifically to prohibit it: the Cable Policy Protection Act ("Cable Act") requires that cable operators like Time Warner destroy such personal information "if the information is no longer necessary for the purpose for which it was collected." 47 U.S.C. §551(e). As such, Plaintiff alleges that when he cancelled his Time Warner subscriptions, retention of his personal information was no longer necessary for the purpose collected and should have been destroyed.

Time Warner's Motion to Dismiss practically laughs in the face of the Cable Act, asserting that the "mere" retention of consumer information is not enough to state a claim under Cable Act. That is flat wrong. The retention of information is *exactly* what the Cable Act targets, and with good reason — the destruction provisions of the Act are intended to protect the privacy and security of consumers (former Time Warner customers) and mitigate the effects of any improper, or even accidental, disclosure of such information. And while Time Warner contends — perhaps only half-seriously — that the Complaint is not pled with enough specificity, there are only so many different ways to say that Time Warner retained customer information long after customer accounts were closed, and long after the information is "necessary for the purpose for which it was collected."

Finally, Time Warner falls back on one of the popular arguments of the day — that Plaintiff and the Class lack Article III and statutory standing to bring claims under the Cable Act, California Customer Record Act ("CCRA"), and Cal. Pen. Code § 637.5 ("Section 637.5") in the supposed absence of allegations showing they suffered actual injury. This argument fails because the Act creates a private

1  right of action for damages based *exactly* on the violations Plaintiff has alleged.

2  That is enough. Time Warner's  other arguments in support of 12(b)(6) dismissal

3  are similarly infirm, as they simply assume away the very issue in dispute and rely

4  on facts that are neither of record nor properly considered at the pleading stage.

5       Time Warner's Motion should be denied.

### **FACTUAL BACKGROUND**

7  ***The Cable Act***

8       In 1984, Congress passed the Cable Communications Policy Act ("the Cable

9  Act") in order to establish a national policy concerning cable communications and

10  their operators. (Compl. ¶ 10.) Congress's main objective in establishing this

11  policy was to combat the numerous privacy issues implicated by the collection and

12  retention of cable subscribers' sensitive personal information. (Compl. ¶ 10.)

13       The Cable Act affords consumers significant protection with respect to the

14  collection, maintenance, and disclosure of personally identifiable information

15  ("PII") provided by the subscriber to the cable operator. (Compl. ¶ 14.) The Cable

16  Act requires cable operators to provide annual notice setting forth the "nature of

17  personally identifiable information collected;" "the nature, purpose, and frequency

18  of any disclosure" of that information; the "period during which such information

19  will be maintained;" "the times and place at which the subscriber may have access

20  to such information;" and the limitations imposed on the cable operator by this

21  provision of the Cable Act. (Compl. ¶ 15 (quoting the Cable Act, 47 U.S.C. §

22  551(a)(1).)

23       In addition, the Cable Act requires cable operators to destroy the PII of

24  former subscribers once it is no longer necessary "for the purpose for which it was

25  collected" and there are no outstanding requests or orders for such information.

26  (Compl. ¶ 16 (quoting 47 U.S.C. § 551(e).) Although the Cable Act does not

27  provide a definition for PII, courts have concluded that it broadly encompasses

28

1    "specific information about the subscriber, or a list of names and addresses on

2    which the subscriber is included." (Compl. ¶ 17.)

3    ***Time Warner's  Collection of PII***

4      Time Warner, a provider of cable television services, requires that

5    subscribers provide PII to Time Warner in order to receive cable service, including

6    social security numbers and/or driver's license numbers, street addresses, phone

7    numbers, and credit card numbers. (Compl. ¶ 19.) Once Time Warner obtains that

8    information, it is maintained on a digital record system with every subscriber's

9    personal information, adding to each consumer's file as Time Warner  acquires

10   more information. (Compl. ¶ 20.) Time Warner  purports to maintain customer PII

11   "as long as it is necessary for our business purposes,"  which "may last as long as

12   you are a subscriber, and if necessary, for additional time so that can comply with

13   tax, accounting, and other legal requirements." (Compl. ¶ 21.)

14   ***Time Warner's  Violation of the Cable Act***

15     Time Warner's practice of retaining customer PII indefinitely violates the

16   Cable Act, which requires cable operators to destroy their former subscribers' PII

17   once the information is no longer needed for the purpose for which it was

18   collected. (Compl. ¶ 23.) Moreover, Time Warner also fails to provide the Cable

19   Act-mandated privacy notices to customers whose accounts have been closed, but

20   whose information is still retained by Time Warner. (Compl. ¶ 24.)

21   <div align="center">

**ARGUMENT**
</div>

22     A motion to dismiss tests the sufficiency of a complaint rather than its

23   merits. *See, e.g., N. Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th

24   Cir. 1983); *Lynx Ventures LP v. Canadian Imperial Bank of Commerce*, 2000 WL

25   33223384, at * 1 (C.D. Cal. Apr. 18, 2000). As the U.S. Supreme Court has

26   explained, a complaint "must contain sufficient factual matter, accepted as true, to

27   state a claim for relief that is plausible on its face … A claim has facial plausibility

28

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put simply, Fed. R. Civ. P. 8 "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *Iqbal*, 556 U.S. at 679 ("[W]hether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its *judicial experience and common sense*.") (internal citation omitted; emphasis added).

In light of this standard — accepting all allegations as true, drawing all reasonable inferences in favor of Plaintiff, and incorporating the common sense and experience of this Court — the Complaint sufficiently pleads the requisite facts demonstrating Plaintiff's standing to pursue the asserted claims, and to withstand Time Warner's  attempt to defeat the case at this stage.

## I.   Plaintiff Has Article III Standing Because Time Warner Violated His Statutory Rights and Caused Him Harm.

Time Warner attacks Plaintiff's standing on two equally flawed grounds: (i) other courts have dismissed cases with unsubstantiated or theoretical injury, and (ii) the Cable Act, CCRA, and Section 637.5's unlawful retention provisions do not create rights sufficient to confer standing. (Def.'s Mem. at III.) Both arguments fail.

To establish Article III standing, the party invoking the court's jurisdiction must "demonstrate that it has suffered a concrete and particularized injury . . . and that a favorable decision will redress that injury." *Mass v. E.P.A.*, 549 U.S. 497, 517 (2007). "The injury may be minimal," *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008), and "can exist solely by virtue of statutes creating legal rights, the

invasion of which creates standing." *Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The standing determination "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," *Warth*, 422 U.S. at 500, and thus "merits-based arguments . . . are not apropos to [the] Court's standing analysis." *Cancel v. City of Chicago*, 254 F.R.D. 501, 506 (N.D. Ill. 2008).

As explained below, plaintiffs have Article III standing where they sue under a statute that, like the Cable Act, creates rights and provides a right of action. And second, unlike other cases where plaintiffs have challenged the misuse of their information by "free" services, Plaintiff here alleges that he did not receive the privacy protections *he paid for* as part of his Time Warner subscription.

### A. Time Warner's  Violation of Plaintiff's Statutory Rights Under the Cable Act Gives Plaintiff Standing to Sue.

Where a plaintiff alleges injury in the form of a statutory violation, "the standing question in such cases is whether the constitutional provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) *cert. granted in part*, 131 S. Ct. 3022 (2011) and *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) (quoting *Warth*, 422 U.S. at 500). Thus, where a statute creates rights and grants a private right of action, a plaintiff whose statutory rights are violated has standing to sue. *See Fulfillment Servs.*, 528 F.3d at 619.[1]

Plaintiff has Article III standing here because he seeks redress for Time Warner's violations of statutory privacy rights. The Cable Act gives Plaintiff and

---

[1] *See also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 885 (1983) ("Standing requires . . . the allegation of some particularized injury to the individual plaintiff. But the legal injury is by definition no more than the vindication of a legal right, and legal rights can be created by the legislature.")

the Class the right to have their PII destroyed in a timely manner, 47 U.S.C. 551(e), and to receive notices regarding the collection, use, and retention of their PII, 47 U.S.C. 551(f)(1). Because Plaintiff alleges violations of these rights, (Compl. ¶¶ 22-26), the Act gives him a right to judicial relief. *Id.* ("Any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court."). Thus, Plaintiff has Article III standing. *Edwards*, 610 F.3d at 517 (quoting *Warth*, 422 U.S. at 500); *Fulfillment Servs.*, 528 F.3d at 618–19.

Plaintiff's standing is confirmed by a Sixth Circuit case also involving claims under the Cable Act. In *Klimas v. Comcast Cable Comms., Inc.*, 465 F. 3d 271 (6th Cir. 2006), the Sixth Circuit held that plaintiffs may sue for a violation of the Cable Act because the statute creates rights and provides consumers with a private right of action. *Id.* at 276; *see Warner v. Am. Cablevision of Kansas City, Inc.*, 699 F. Supp. 851, 859 (D. Kan. 1988) ("The court finds that Warner was thereby "aggrieved" by American's violation of the Cable Act. No finding of actual damages or an actual invasion of privacy is required.") That is exactly the case here.

The Northern District of Illinois' recent decision in *Sterk v. Redbox Automated Retail, LLC*, 2012 WL 3006674 (N.D. Ill. July 23, 2012) (hereinafter "*Redbox III*"), is also instructive. There, the court found that even though the Video Privacy Protection Act's ("VPPA") unlawful retention provision did not have a private right of action, plaintiffs suing for its violation nonetheless had Article III standing. *See Redbox III*, 2012 WL 3006674, at *9 ("The lack of recoverable damages does not eliminate standing . . . Plaintiffs still have an injury, even if only a highly attenuated one, if Redbox retained their personal information without authorization.") (internal citations omitted).

Put simply, if the *Redbox III* plaintiffs had Article III standing *even without a*

statutory right to damages, then here, Plaintiff certainly has Article III standing to vindicate his rights under the Cable Act, which includes a right to statutory damages.

### B. Time Warner's Own Cited Cases Defeat Its Arguments.

Time Warner's argument to the contrary is directly refuted by the cases cited in its Motion. For instance, although the court in *Low v. LinkedIn Corp.* ("*Low I*") dismissed the plaintiff's complaint for lack of standing, it noted that the plaintiff failed to argue that the violation of his statutory rights under the Stored Communications Act ("SCA") established Article III standing, and thus granted leave to amend. 2011 WL 5509848, at * 6 n.1 (N.D. Cal. Nov. 11, 2011). When the plaintiff raised this *exact argument* in a subsequent rehearing, the court held that the alleged violations of the plaintiff's statutory rights *did* establish Article III standing. *Low v. LinkedIn Corp.*, 2012 WL 2873847, at *3 (N.D. Cal. July 12, 2012) ("*Low II*") (holding that the plaintiffs had standing) ("Plaintiffs have alleged a violation of their statutory right under the Stored Communications Act. . . . Thus, Plaintiffs have articulated harm which is "concrete" for the purposes of Article III standing. . . ."); *see Gaos v. Google, Inc.*, 2012 WL 109446, at *3 (N.D. Cal. Mar. 29, 2012) ("Thus, a violation of one's statutory rights under the SCA is a concrete injury.").

Time Warner's other cited case is similarly off the mark. The plaintiffs in *LaCourt v. Specific Media* apparently never argued that a statutory violation was sufficient to establish Article III standing, as this argument is not mentioned in the opinion. 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011). Nor would this argument have mattered. The court held that the plaintiffs had failed to allege the defendant had actually collected their PII, thus foreclosing any statutory violation that could establish standing. *Id.* at *4 ("An inference might be drawn, but rather than invite an argument over the reasonableness of such an inference, Plaintiffs should have

specifically alleged that they were affected by Defendant's alleged practices.").[2]

Accordingly, there is no serious debate that Plaintiff's allegations of violations of the Cable Act establish standing.

### C. Plaintiff Also Has Standing Because Time Warner's Failure to Comply with the Cable Act, CCRA, and CLRA Caused Plaintiff Economic Harm.

Time Warner argues that Plaintiff failed to allege any actual injury caused by Time Warner's violations of the Cable Act. Not so. Plaintiff alleges that he suffered an injury-in-fact because Time Warner's conduct deprived him of the paid-for privacy protections he was expressly entitled to receive pursuant to his service agreement with Time Warner. Where a plaintiff alleges monetary harm caused by the defendant's conduct, the plaintiff has standing to sue. *See Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review.").

More specifically, a plaintiff can establish monetary harm by alleging that the defendant's failure to fulfill its contractual obligations resulted in a loss of expectation interests — *i.e.* the full benefit of the bargain. *Daghlian v. DeVry Univ., Inc.,* 461 F. Supp. 2d 1121, 1155 (C.D. Cal. 2006) (accepting plaintiff's theory that he suffered injury because he paid thousands of dollars of tuition to defendant university and "did not receive what he had bargained for.") Thus, when a plaintiff pays for a service and is entitled to certain privacy protections as a part of that service, failure to provide those privacy protections creates economic injury. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) citing *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1111–13 (N.D. Cal. 2010); *cf. Resnick v.*

---

[2] To the extent that *LaCourt* does require something more than a statutory violation to establish Article III standing — despite the binding Supreme Court precedents cited above — Plaintiff has satisfied this requirement by alleging a sufficient economic injury, as demonstrated in Section I.C., *infra*.

*Avmed, Inc.*, No 11-13694, 2012 WL 3833035, at *8 (11th Cir. Sept. 5, 2012) (finding unjust enrichment where plaintiffs paid for services which included information privacy and security guarantees, and defendant did not fulfill those guarantees).

The Northern District of California's decision in *In re Facebook Privacy Litigation* is instructive on this point. There, the court distinguished between privacy violations for paid services and free services. 791 F. Supp. 2d at 715. For free services, the court held that personal information disclosure alone does not create economic harm. *Id.* But for *paid* services, the court cited *Doe 1 v. AOL, LLC*, and noted that when a provider of a paid service discloses consumers' personal information in violation of its own policies and federal law, there is economic harm because such misuse of personal information was "not something that members bargained for when they signed up and *paid fees for* [the defendant's] service." *Id.* (quoting *Doe 1*, 719 F. Supp. 2d at 1113) (emphasis added by *In re Facebook*); *see Avmed*, 2012 WL 3833035, at * 8 (holding that part of plaintiff's insurance premiums was paid to ensure data privacy and security, and thus defendant's failure to follow its own data security practices established economic harm.)

The same is true here. As in *Doe 1* and *Avmed*, Plaintiff alleges he paid money in exchange for Time Warner's cable television services (which he did), (Compl. ¶¶ 56, 66, 88-90), and that Time Warner failed to provide the privacy protections required by the Cable Act in exchange for Plaintiff's paid subscription (which it did), (Compl. ¶¶ 50-79).

Moreover, the Complaint further alleges:

- "[C]onsumers not only place a high value on their PII, but also place a high value on the *privacy* of this data. Thus, the question is not *whether* consumers value such privacy; the question is '*how much* [consumers] value' that privacy." (Compl. ¶31.)

- "Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable." (Compl. ¶32.)

- "When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website." (Compl. ¶33.)

- "Given these facts, any company that transacts business with a consumer and then retains that consumer's PII in contravention of statutorily guaranteed privacy protections has thus deprived that consumer of the full monetary value of the consumer's transaction with the company." (Compl. ¶34.)

Plaintiff has thus alleged an economic injury that directly resulted from Time Warner's failure to comply with the Cable Act. Because the CCRA[3] and Section 637.5 impose identical restrictions on the retention of PII, this economic injury is sufficient to establish standing for *all* of Plaintiff's statutory claims — even under Time Warner's standard.

Attempting to fashion a contrary rule, Time Warner argues that Plaintiff's failure to receive "the full value of the services he bargained and paid for" does not constitute a sufficient economic injury to establish Article III standing. (Def.'s Mem. at 6.) Once again, Time Warner's argument is not simply wrong, but directly contrary to its own cited case. In *Boorstein v. Men's Journal LLC*, a recent decision from another court in this district, Judge Fischer held that a plaintiff who fails to receive the privacy protections he was expressly promised as part of a paid subscription **has** suffered economic harm sufficient to establish Article III standing. 2012 WL 2152815, at * 4 (C.D. Cal. June 14, 2012). ("Plaintiff does not claim that Defendant promised compliance with § 1798.83 [the CCRA] as part of his

---

[3] Time Warner's assertion that the CCRA does not prohibit the retention of PII is completely without merit, as discussed in Section IV, *infra*.

subscription, nor does he claim that he reasonably expected that Defendant would do so. *Absent either claim, there is no economic harm.*") (Emphasis added.)

Further, and unlike *Boorstein*, Time Warner expressly promised its customers — including Plaintiff — the privacy protections of the Cable Act in exchange for paid subscriptions. As Time Warner explains, its Privacy Policy was part of the express contract between itself and Plaintiff. (Def.'s Mem. at 17.) The Privacy Policy states that "[t]he Communications Act provides you with a cause of action for damages, attorneys' fees and costs in federal District Court should you believe that any of the Communications Act's limitations on the collection, disclosure, and **retention of personally identifiable information have been violated by us**."[4]

Thus, it is clear that Time Warner expressly agreed to comply with *all* of the Cable Act's privacy protections — including the unlawful retention prong — as part of Plaintiff's paid subscription. Time Warner's failure to do so is sufficient to establish economic harm, as confirmed by Judge Fischer's opinion in *Boorstein*.

## II. The Cable Act Provides an Express Right of Action for Violation of its Unlawful Retention Provision.

Time Warner claims that despite its plain text, the Cable Act's private right of action does confer statutory standing for violations of its unlawful retention provision. In particular, Time Warner argues that its violations of the Cable Act were not sufficient to render Plaintiff "aggrieved," which precludes him from establishing statutory standing. (Def.'s Mem. at 7-8.) Time Warner's argument is plainly infirm.

*First*, the analysis of whether Plaintiff is "aggrieved" within the meaning of

---

[4] *See* Def.'s RJN, Ex. B at 4 (Privacy Notice) (emphasis added); *also available at* http://help.twcable.com/html/twc_privacy_notice.html (last visited December 12, 2012). Importantly, the Cable Act is part of the Communications Act. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751-52 (9th Cir. 2000) ("Plaintiffs claimed that AOL violated the Communications Act, 47 U.S.C. §§ 201, 202(b), *551* . . . .") (emphasis added).

the Cable Act begins with the language of the statute itself. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461–62 (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 349, 253–54 (1992)).

The Cable Act provides a private right of action to "[a]ny person aggrieved by *any act* of a cable operator in violation of this *section*." 47 U.S.C. § 551(f)(1) (emphasis added). "[T]his section" encompasses all of the Cable Act's privacy provisions, including its unlawful retention provision, 47 U.S.C. § 551(e). A party is aggrieved if he or she is "entitled to a remedy; esp[ecially], a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." BLACK'S LAW DICTIONARY at 1232 (9th ed. 2009). Thus, a party is "aggrieved," and therefore has statutory standing, whenever their Cable Act rights are violated. 47 U.S.C. § 551(f)(1).

***Second***, as noted above, the Privacy Policy — which Time Warner concedes is an express written contract — clearly states that Plaintiff may file a claim for damages if he believes that "any of the [Cable Act's] limitations on  . . . the retention of [PII] has been violated by[Time Warner]." (Def.'s RJN, Ex. B at 4.) Thus, Time Warner has not only conceded that the retention Plaintiff's PII is sufficient to render him "aggrieved" and thereby file suit under the Cable Act, *it has expressly provided Plaintiff a contractual right to do so.*

### A. Time Warner's Statutory Standing Arguments are Directly Contrary to *Redbox* and Other Relevant Decisions.

Perhaps recognizing that the plain language of the Cable Act and the Privacy Policy defeats its arguments, Time Warner contends that the Seventh Circuit's interpretation of a "similar statute" — the VPPA — warrants dismissal of Plaintiff's Cable Act claims. The reason Time Warner attempts this commingling

is that the Seventh Circuit recently held that the VPPA did not create a private right

of action for damages based on unlawful retention, given the language (and

structure) of *that statute*. Thus, Time Warner figures that if it can convince this

Court that what the Seventh Circuit said of the VPPA also applies to the Cable Act,

Time Warner  might score an early victory here. The problem for Time Warner,

however, is that the statutes differ from one another on this *exact* point.

In *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012)

(hereinafter "*Redbox II*") the Seventh Circuit based its decision that the VPPA's

enforcement mechanism did not apply to retention claims on the enforcement

provision's placement within the statute:

> The biggest interpretive problem is created by the statute's
> failure to specify the scope of subsection (c), which creates the
> right of action on which this lawsuit is based. *If (c) appeared
> after all the prohibitions, which is to say after (d) and (e) as
> well as (b), the natural inference would be that any violator of
> any of the provision could be sued for damages*.

672 F.3d at 538 (emphasis added). In other words, because the VPPA enforcement

provision is hierarchically placed *before* the "destruction of old records" provision,

the Seventh Circuit reasoned that the enforcement provision could not be used to

bring a claim for unlawful retention. *Id.*

That is *not* the case here — the Cable Act's enforcement mechanism is

placed *after* the statute's unlawful retention provision. *See* 47 U.S.C. § 551(f).

Thus, "the natural inference [is] that any violator of any of the provisions,"

including the unlawful retention provision, "could be sued for damages." *See

Redbox II*, 672 F.3d at 538. Moreover, while other provisions in the VPPA

suggested that aggrieved persons were limited to victims of unlawful disclosures,

the Cable Act contains no similar provision, and *Redbox II* therefore does not

support Time Warner.[5]

---

[5] Additionally, even if retention did not make Plaintiff "aggrieved," Plaintiff's privacy
notice claims and allegations of economic harm do so. *See Warner*, 699 F. Supp. at 859–60

1    It is true that, in dicta, the *Redbox II* court also mused that that there could

2   be no actual damages under the VPPA absent disclosure. This was simply

3   speculation about Congress' possible motivations in drafting the VPPA, and how

4   the statute should be interpreted given those possible motivations. *See Redbox II*,

5   672 F.3d at 539 (opining that because damages from retention would be attenuated,

6   "it would be no surprise if Congress had decided — as the placement of the

7   damages section suggests — not to provide a damages remedy."). The difference

8   here, of course, is that speculation concerning whether Congress intended a private

9   right of action based on retention is neither necessary nor appropriate: the Cable

10   Act *expressly* provides for a right of action, and unlike the VPPA, there is no

11   mystery created by the sequence of the Cable Act's damages provision.[6]

12    Time Warner's reading of *Doe v. Chao* is equally flawed. 540 U.S. 614, 620.

13   First, and contrary to Time Warner's assertions, the *Chao* Court expressly held that

14   the plaintiff ***did*** have standing to sue.[7] The Court also determined that, based on the

---

15   (finding statutory standing for Cable Act privacy notice claims); *see also Sierra Club*, 405 U.S.
16   at 736–37 (noting that a party is "clearly 'aggrieved'" when it suffers economic injury).

17   [6] The fact that Congress chose to create a private right of action for damages based on
18   retention is unsurprising, given that when the Cable Act was under debate in Congress, consumer
     privacy and the dangers of indefinite retention were specifically cited:

19       Cable systems, particularly those with a 'two-way' capability, have an enormous
20       capacity to collect and store personally identifiable information about each cable
         subscriber.  Subscriber records from interactive systems can reveal details about
         bank transactions, shopping habits, political contributions, viewing habits and
21       other significant personal decisions.  It is [therefore] important that national cable
         legislation establish a policy to protect the privacy of cable subscribers.  A
22       national policy is needed because, while some franchise agreements restrict the
         cable operator's use of such information, privacy issues raise a number of federal
23       concerns, including protection of the subscribers' first, fourth, and fifth
         amendment rights.  At the same time, such a policy must also recognize and
24       unnecessarily or unreasonably impede those flows of information necessary to
         provide the service to the subscribers.
25   H.R. Rep. 98-934 at 4666-67 (1984).

26       [7] In determining that the *Chao* plaintiff had statutory standing, the Court explained that
     the plaintiff *was* adversely affected by the violation of the Privacy Act notwithstanding his lack
27   of actual damages. 540 U.S. at 624-25. As the Court put the point:
         T]he reference in § 552a(g)(1)(D) to "adverse effect" acts as a term

---

specific language of *that statute* (the Privacy Act), if Congress had intended to provide statutory damages under the Privacy Act without a showing of actual damages, it "could have accomplished its object simply by providing that the Government would be liable to the individual for actual damages "*but in no case ... less than the sum of $1,000*" plus fees and costs." *Id.* (emphasis added). **That is exactly what the Cable Act provides**. 47 U.S.C. 551(f)(2) ("The court may award . . . *actual damages but not less than liquidated damage*s computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher. . . .") (emphasis added).

Thus, both *Redbox* and *Chao* demonstrate that Plaintiff has statutory standing to sue for unlawful retention *and* can recover statutory damages without pleading or proving actual damages. Importantly, the relevant Cable Act cases (which Time Warner conveniently omits from its Motion) are all in accord. *E.g., Warner*, 699 F. Supp. at 859–60 (stating that because defendant failed to provide the required privacy notice, plaintiff "was thereby 'aggrieved' by [the defendant's] violation of the Cable Act. No finding of actual damages or an actual invasion of privacy is required. . . . Therefore, [Plaintiff] is entitled to recover liquidated damages and attorney's fees."); *Metrovision of Livonia, Inc. v. Wood*, 864 F. Supp. 675, 680 (E.D. Mich. 1994) ("[I]t is difficult to conceive of how a subscriber might suffer 'actual' injury as a result of a cable operator's failure to timely provide the

---

of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue. . . . That is, an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act. *Id.* at 624-25 (internal quotations and citations omitted).

The same is true here. A Cable Act claim can only be brought by those "aggrieved" by a violation of the statute. Although Time Warner contends that Plaintiff does not qualify as "aggrieved" without alleging some additional injury apart from the statutory violation, its argument is directly refuted by *Chao*.

subscriber with the proper disclosures as required by section 551(a)(1). ***As a result, defendants are limited to seeking only recovery of statutory damages and attorney fees under section 551(f)(2).***") (Emphasis added).

Thus, while Time Warner asserts that there is no "controlling authority addressing what is meant by an 'aggrieved person,'" Time Warner is not being truthful with the Court. Those courts that *have* considered the issue all rejected Time Warner's arguments. Accordingly, the Cable Act's plain text, *Redbox II*, *Chao*, and relevant Cable Act cases demonstrate that the Cable Act violations described in the Complaint are sufficient to render Plaintiff "aggrieved" within the meaning of the statute. As a result, Plaintiff can sue for violation of the Cable Act's unlawful retention provision.[8]

## B. Time Warner Is Not At Liberty To Violate the Cable Act Whenever Customers Cancel Their Service.

Time Warner asserts that it can disregard the Cable Act and use Plaintiff's PII however it sees fit, simply because Plaintiff cancelled his cable service. Time Warner contends that "subscriber," as used in the Cable Act, applies only to current fee-paying subscribers, thereby excluding former subscribers and subscribers who have already made their final payment. (Def.'s Mem. at 15.)

Time Warner's interpretation would be contrary to the Cable Act's purpose of protecting privacy and would produce unintended and unusual results — it would allow cable providers to indefinitely retain their former subscribers' information, and disclose the information to anyone they please, without

---

[8] Even if the Court held that Plaintiff could not maintain an action for damages based on retention – which would be contrary to the Act itself and to the caselaw – Plaintiff would still be able to maintain claims for injunctive relief. *See Redbox II*, 2012 WL 3006674, at *9 (stating that, regardless of the plaintiffs' ability to recover statutory damages, the plaintiffs were able to pursue injunctive relief claims) and *Redbox III*, 2012 WL 3006674, at *9 (recognizing that the Seventh Circuit's decision in *Redbox II* expressly stated that the plaintiffs would be allowed to proceed on their injunctive relief claim, even if they could not proceed on their claims for statutory damages).

---

consequence. As a consumer protection statute, the Cable Act should not be read to frustrate its own purpose. *See Consumer Solutions REO, LLC v. Hillery*, 2010 WL 1222739, at *5 (N.D. Cal. Mar. 24, 2010) (noting the "general rule that remedial laws . . . designed to protect consumers should be liberally construed") (citing *Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114 (9th Cir. 2009)).

Rather than allowing Time Warner to indefinitely retain and disclose consumers' social security numbers, addresses, phone numbers, and credit and debit card information, (Compl. ¶ 20), the Court should find that subscribers are entitled to the Cable Act's protections for as long as cable providers are in possession of their PII. Accordingly, because Time Warner still retains Plaintiff's PII, the Court should find that Plaintiff and the Class are still entitled to the Cable Act's protections, and that Time Warner was obligated to provide them with § 551(a)(1) notices.

## III.    Plaintiff Has Adequately Pled His Unlawful Retention Claim.

Time Warner argues that Plaintiff's unlawful retention claims under the Cable Act, CCRA, and Section 637.5 are insufficiently pled and therefore fail under the *Iqbal/Twombly* standard. That is false. To state a claim for unlawful retention under each statute, a plaintiff must only allege that: (1) the defendant collected personally identifiable information from the plaintiff; (2) the information is no longer necessary for the purpose for which it was collected; and (3) defendant has failed to destroy such information. 47 U.S.C. § 551(e), Cal. Civ. Code § 1798.81; Cal. Pen. Code § 637.5(b). Plaintiff has done that here and thus satisfied his burden under Federal Rule 8(a).

Plaintiff alleges that Time Warner collected his PII at the time of subscription, gathering information such as his "address, home and work telephone numbers, social security number, and credit card information. (Compl. ¶¶ 19, 35.) He also alleges that, as a former subscriber, Time Warner  no longer needs his PII.

(Compl. ¶¶ 23, 24, 58.) And he alleges that despite no longer needing his PII, Time Warner continues to retain it, (Compl. ¶¶ 38, 42, 58), and that Time Warner's practice is to retain the PII indefinitely. (Compl. ¶¶ 23, 24). Thus, Plaintiff adequately pled the elements of his retention claim – Period.

Time Warner's arguments are long on rhetoric but short on everything else. And they cannot be reconciled with the Complaint.

Specifically, Time Warner claims the Complaint fails because Plaintiff does not provide any facts to support his allegation that "[o]n information and belief . . . Time Warner still retains [Plaintiff's] PII."[9] (Def.'s Mem. at 11-12.) And, says Time Warner, the same is true with respect to the allegation that "[o]n information and belief, Time Warner has not taken a single step" towards destroying Plaintiff's PII. (Def.'s Mem. at 12.).

Wrong. Plaintiff alleged the *exact* PII that he provided to Time Warner, (Compl. ¶ 35: address, phone numbers, social security number, and credit card number), the manner in which Time Warner maintains digital records of its subscribers' PII, (Compl. ¶ 20), and Time Warner's policy and practice of indefinitely retaining its former subscribers' PII. (Compl. ¶ 22.) These factual allegations are sufficient – and certainly at the pleading stage – to show Time Warner still retains Plaintiff's PII and has taken no steps towards destroying it.[10]

The cases cited in Time Warner's Motion do not compel a different result. For instance, in *Kemp v. Int'l Bus. Machs. Corp.*, the Court dismissed the Plaintiff's claim because he failed to allege *any* factual allegations to support his

---

[9] Lest there be any doubt on this point, Plaintiff *did* contact Time Warner before filing suit. Time Warner confirmed that Plaintiff's name, address and prior address on file, and stated that this information "would not go away." If the Court determines that Plaintiff has failed to allege enough factual allegations to support his unlawful retention claim, Plaintiff respectfully seeks leave to amend.

[10] What is more, *all* of the information that Plaintiff provided — his address, phone numbers, social security number, and credit card number — qualifies as PII pursuant to the express terms of Time Warner's Privacy Policy. *See* Def.'s RJN, Ex. B at 1 (defining PII).

1  speculation that IBM failed the payroll records in a centralized location, as
2  required by law. 2010 WL 4698490, at * 4 (N.D. Cal. Nov. 8, 2010); *see Essex Ins.*
3  *Co. v. Miles*, 2010 WL 509871, at * 3 (E.D. Pa. Dec. 3 2010) (claim dismissed
4  where plaintiffs simply recited elements of claim). The same is not true here. [11]

5  Time Warner also says that its retention of Plaintiff's PII—including his
6  social security number, (Compl. ¶¶ 19, 35) — does not constitute a violation of
7  Section 551(e) because it *could* be used for tax, accounting, and other legal
8  requirements. (Def.'s Mem. at 13-14.) This type of defense is fact-based: it
9  depends on the specific facts regarding what information Time Warner retains, the
10  length of time it is retained, what purpose Time Warner has for collecting the
11  information, if any, and how long Time Warner needed to retain the information
12  for that purpose (and whether those justifications apply to *all* of the PII Time
13  Warner maintains). And even if considered, these defenses must fail because they
14  are completely unsubstantiated: Time Warner fails to provide any reasons for *why*
15  it needs the information.

16  Thus, Time Warner's tax and accounting arguments must be rejected at this
17  stage. Whether Time Warner was required to maintain Plaintiff's PII for those
18  purposes "in the ordinary course of business" is a factual question that must be
19  rejected at this stage. *See In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D.
20  Cal. Aug. 10, 2012) (applicability of the Video VPPA's "ordinary course of
21  business" exception is a "factual question[] that cannot be resolved in a motion to
22  dismiss.").

23  Time Warner will have every opportunity to make these arguments when the
24  Court is presented with a complete factual record following discovery — but it
25  cannot do so at the pleading stage. Time Warner's Motion must therefore be

---

[11] Time Warner also argues that Plaintiff has not alleged that he paid his account in full. (Def.'s Mem. at 13.) Not so. The Complaint expressly alleges that Plaintiff "paid the consideration owed to [Time Warner] for the provision of cable service." (Comp. ¶ 87.)

1 denied.

2 **IV.   The CCRA Prohibits the Retention of PII.**

3     Time Warner's reading of the California Customer Records Act ("CCRA"),

4 if adopted, would create absurd results and undermine the purpose of the statute.

5 The CCRA provides:

6
7        A business *shall* take all reasonable steps to dispose, or
8        arrange for the disposal, of customer records within its
9        custody or control containing personal information *when*
       *the records are no longer to be retained by the business*
10        by (a) shredding, (b) erasing, or (c) otherwise modifying
       the personal information in those records to make it
       unreadable or undecipherable through any means.

11 Cal. Civ. Code § 1798.81 (emphasis added).  There is no dispute (nor can there be

12 at the pleading stage) that Time Warner retained PII after customers' accounts

13 were terminated, and past the point when Time Warner had any legitimate basis to

14 retain the information. Because Time Warner failed to take reasonable steps to

15 dispose of the records, Time Warner has violated the CCRA.

16     Time Warner argues that the statute is only triggered when a business

17 actually begins to discard information, and creates liability only when the business

18 fails to take appropriate measures in the process of discarding information.  Thus,

19 on Time Warner's view, the way to avoid running afoul of the statute is *simply to*

20 *do nothing at all*. On that view, because Time Warner took no measures and made

21 no effort to dispose of sensitive PII that it no longer required, Time Warner is

22 home-free. That is an absurd result.

23     A correct reading of the CCRA cannot be one in which a business like Time

24 Warner has *less* incentive to purge customer records because of the statute. If that

25 reading is adopted here, every business in California will retain customer

26 information indefinitely, lest the business make some effort to actually discard the

27 information, and then (and only then) subject itself to liability. That would destroy

28

the purpose of the statute. As the CCRA itself makes clear: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to *encourage businesses* that own or license personal information about Californians *to provide reasonable security* for that information." Cal. Civ. Code § 1798.81.5 (emphasis added).

Consistent with these concerns, the Supreme Court of California has explained that "informational" privacy – defined as an interest in precluding the misuse of sensitive and confidential information – is the "core value" of the state's constitutional right to privacy. *Hill v. National Collegiate Athletic Association*, 7 Cal.4th 1, 35-36 (1994). This sensitive and confidential information is data for which "well-established social norms recognize the need to maximize individual control" so as to prevent its dissemination and use. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370 (2007).[12]

The case cited by Time Warner, *Doe I*, is not to the contrary. *Doe* referred to the language in the CCRA itself to support its observation that the statute is triggered "only 'when the records are no longer to be retained by the business.'" While the court did note (without analysis) that the statute applies when the business "intends" to discard information, the court cited no authority for this view. And in any event, the court went on to identify the true "triggering" event – consistent with the letter of the statute – as the moment "when the records are no longer to be retained by the business." 719 F. Supp. 2d at 1114 (quoting Cal. Civ. Code § 1798.81).

Thus, while there is certainly no dispute that a company's "intent" to discard information triggers the CCRA, the real question – not addressed by *Doe* – is whether a company can refuse to delete PII indefinitely (even when the

---

[12] *See also* Federal Trade Commission, Identity Theft Victim Complaints Trends by State, (Feb.2010) http://www.ftc.gov/bcp/edu/microsites/idtheft/downloads/CY2009/California%20CY-2009.pdf (ranking California as the fourth-worst state in the nation for identity theft).

1   information is no longer necessary for any business purpose) and avoid the CCRA

2   completely.    Again, that reading of the CCRA would completely vitiate the

3   statute.[13]

4   <center>**CONCLUSION**</center>

5          For all of the foregoing reasons, Plaintiff respectfully requests that this Court

6   deny Time Warner's Motion to Dismiss, or in the alternative, grant Plaintiff leave

7   to amend the Complaint.[14]

8

9   Dated: December 17, 2012             Respectfully submitted,

10                                        TODD BURTON, individually and on

11                                        behalf of all others similarly situated,

12                                        By: /s/ Joseph J. Siprut

13                                             One of the Attorneys for Plaintiff
                                             And the Proposed Putative Classes
14

15   Joseph J. Siprut*
     *jsiprut@siprut.com*
16   Aleksandra M. S. Vold*
     *avold@siprut.com*
     SIPRUT PC
17   17 North State Street, Suite 1600
     Chicago, Illinois 60602
18   312.312.0000
     Fax: 312.947.9196
19

20

21

22   _____

23   [13] Plaintiff acknowledges that a district court in the Northern District of California just
     recently held that the CCRA does not apply to the *retention* of PII, and – candidly – rejected all
24   of the arguments we advance here on the CCRA. *Frezza v. Google Inc.*, 2012 WL 5877587, at *5
     (N.D. Cal. Nov. 20, 2012). That non-binding decision, however, was incorrectly decided for the
25   reasons explained above.

26   [14] Because Time Warner concedes its Privacy Provision is an express written contract
     that covers the same subject matter as the implied contract alleged in the Complaint, Plaintiff
27   voluntarily dismisses his claim for breach of implied contract, and seeks leave to amend the
     Complaint to add a claim for Breach of Express (rather than implied) Contract.
28

1   Todd C. Atkins
    *tatkins@siprut.com*
2   SIPRUT PC
    701 B Street, Suite 1170
3   San Diego, CA  92101
    619. 255.2380
4   Fax: 619.231.4984

5   Jay Edelson*
    *jedelson@edelson.com*
6   Ari J. Scharg*
    *ascharg@edelson.com*
7   EDELSON MCGUIRE LLC
    350 North LaSalle Street, Suite 1300
8   Chicago, Illinois 60654
    Telephone: (312) 589-6370
9

10  *Pro hac vice* admittance to be sought

11  4811-6009-0386, v. 1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2  The undersigned certifies that, on December 17, 2012, I caused this

3 document to be electronically filed with the Clerk of the Court using the CM/ECF

4 system, which will send notification of filing to counsel of record for each party.

5

6  /s/ Joseph J. Siprut

7

8

4811-6009-0386, v. 2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28