1  BRYAN A. MERRYMAN (SBN 134357)
   bmerryman@whitecase.com
2  RACHEL J. FELDMAN (SBN 246394)
   rfeldman@whitecase.com
3  JONATHAN A. ALON (SBN 265102)
   jalon@whitecase.com
4  WHITE & CASE LLP
   633 W. Fifth Street, Suite 1900
5  Los Angeles, CA  90071-2007
   Telephone:  (213) 620-7700
6  Facsimile:   (213) 452-2329

7  Attorneys for Defendant
   TIME WARNER CABLE INC.
8

9            UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12

13  TODD BURTON, on behalf of      No. CV 12-06764 JGB (AJWx)
    himself and all others similarly
14  situated,                       **DEFENDANT TIME WARNER
                                    CABLE INC.'S REPLY
15          Plaintiff,              MEMORANDUM IN SUPPORT OF
                                    ITS MOTION TO DISMISS
16      v.                          COMPLAINT**

17  TIME WARNER CABLE INC.,

18          Defendant.              Date: February 25, 2013
                                    Time: 8:30 a.m.
19                                  Dept: 790 (Roybal Building)
                                    Judge: Hon. Jesus G. Bernal
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**
I.   INTRODUCTION ........................................................................................ 1

II.  THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY PURSUANT TO RULES 12(B)(1) AND 12(B)(6) ............. 2

    A.  Plaintiff Lacks Injury to Support Article III or Statutory Standing ................................................................................................ 2

        1.  Plaintiff Does Not Gain Standing Simply By Alleging Conclusory Violations of Various Statutes ................................. 2

        2.  Plaintiff Has Not Sustained Economic Harm ............................. 7

    B.  Plaintiff's Allegations Fail to State a Claim ......................................... 10

    C.  Section 551(a) Does Not Apply to Former Subscribers ...................... 13

    D.  The CCRA Does Not Apply to the Retention of PII ........................... 13

III. PLAINTIFF'S PROPOSED AMENDMENT WOULD BE FUTILE ........... 14

IV.  CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 10, 11, 12

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) .................................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 10

*Boorstein v. Men's Journal, LLC*,
  No. CV 12-771 DSF (Ex), 2012 WL 2152815 (C.D. Cal. June 14, 2012) ......... 3, 5

*Crain v. Credit Protection Ass'n*,
  No. 3:09-CV-2353-D, 2010 WL 1223127 (N.D. Tex. Mar. 2, 2010) ................... 12

*Doe 1 v. AOL LLC*,
  719 F. Supp. 2d 1102 (N.D. Cal. 2010) ............................................................. 8, 14

*Doe v. Chao*,
  540 U.S. 614 (2004) .................................................................................................. 6

*Edwards v. First Am. Corp.*,
  610 F.3d 514 (9th Cir. 2010) .................................................................................... 3

*Essex Ins. Co. v. Miles*,
  No. 10-3598, 2010 WL 5069871 (E.D. Pa. Dec. 3, 2010) ..................................... 11

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ................................................................. 7, 8

*Frezza v. Google Inc.*,
  No. 12-CV-00237-RMW, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) .......... 14

*In re Google, Inc. Privacy Policy Litig.*,
  No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012) ................ 7, 9

*In re Hulu Privacy Litig.*,
  No. C-11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ................... 12

*In re iPhone Application Litig.*,
  No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............. 9

*Johnson v. Homecomings Fin.*,
  No. 09-CV-1262-NLS, 2012 WL 1357675 (S.D. Cal. April 19, 2012) ............... 11

*Kemp v. Int'l Bus. Machs. Corp.*,
  No. C-09-4683 MHP, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) .................... 11

*Klimas v. Comcast Cable Commc'ns, Inc.*,
  465 F.3d 271 (6th Cir. 2006) ............................................................................. 4, 5

*LaCourt v. Specific Media*,
  No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal Apr. 28, 2011) . 4

*Low v. LinkedIn Corp.*,
  No. 11-CV-01468-LHK, 2012 WL 2873847 (N.D. Cal July 12, 2012) ................. 4

*McKenzie v. Fed. Exp. Corp.*,
  765 F. Supp. 2d 1222 (C.D. Cal. 2011) .................................................................. 7

*Metrovision of Livonia, Inc. v. Wood*,
  864 F. Supp. 675 (E.D. Mich. 1994) ...................................................................... 5

*Resnick v. Avmed*,
  693 F.3d 1317 (11th Cir. 2012) .............................................................................. 9

*Rodriquez v. Sony Computer Entm't Am. LLC*,
  No. C 11-4084 PJH, 2012 WL 4464563 (N.D. Cal. Sept. 25, 2012) ................. 6, 8

*Scofield v. Telecable of Overland Park, Inc.*,
  751 F. Supp. 1499 (D. Kan. 1990) ......................................................................... 5

*Scofield v. Telecable of Overland Park, Inc.*,
  973 F.2d 874 (10th Cir. 1992) ................................................................................ 5

*SEC v. McCarthy*,
  322 F.3d 650 (9th Cir. 2003) ................................................................................ 13

*Sterk v. Best Buy Stores, L.P.*,
  No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ............................ 3, 4

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) ............................................................................. 5, 6

*Sterk v. Redbox Automated Retail, LLC*,
   No. 11 C 1729, 2012 WL 3006674 (N.D. Ill. July 23, 2012) ............................... 6, 7

*Warner v. Am. Cablevision of Kansas City*,
   699 F. Supp. 851 (D. Kan. 1988) ........................................................................ 4, 5, 12

## **FEDERAL STATUTES**

17 U.S.C. § 122(j)(6) ............................................................................................... 13

18 U.S.C. § 2710(c)(2)(d) ......................................................................................... 7

26 U.S.C. § 6501(e)(1) ............................................................................................ 13

47 U.S.C. § 338(k)(9) ............................................................................................. 13

47 U.S.C. § 551 ............................................................................................... passim

## **FEDERAL RULES**

Fed. R. Civ. Proc. 8(a) ............................................................................................ 10

Fed. R. Civ. Proc. 12 ................................................................................................ 2

## **STATE STATUTES**

Cal. Civ. Proc. Code § 1798.84(b) ........................................................................... 3

Cal. Pen. Code § 637.2(a) ........................................................................................ 3

Cal. Pen. Code § 637.5 ........................................................................................ 3, 10

## **TREATISES**

Black's Law Dictionary, p. 77 (9th ed. 2009) ......................................................... 3

## I.  INTRODUCTION

Plaintiff Todd Burton's opposition to defendant Time Warner Cable Inc.'s ("TWC") motion to dismiss concedes he has sustained no quantifiable economic injury as a result of TWC's alleged retention of his personally identifiable information ("PII") and, at most, all he alleges are the bare elements of his claims with no factual support.[1] This is because Plaintiff's counsel, who boasts on their website that "Siprut PC sues the entire cable industry," has recycled the same vague and conclusory allegations against TWC as they have made in "class action lawsuits against virtually all major operators in the cable industry."[2]

The complaint shows Plaintiff knows and can allege nothing about TWC's actual policies and practices concerning its retention of subscriber data.  Rather than allege facts, he merely recites the bare elements of each claim, presumably hoping the Court will allow him to bypass his pleading burden and commence an expensive "fishing" expedition into TWC's internal records in search of a statutory violation.  Unfortunately for Plaintiff, the Supreme Court has put a stop to this type of misuse of our courts.  While there may be "only so many different ways to say that Time Warner retained customer information" (Opp. at 1), Plaintiff has failed to allege anything of substance.

In an effort to distract from his deficient pleading, Plaintiff ignores that he has failed to allege the type of facts require by *Twombly* and *Iqbal* and spends the majority of the opposition arguing (unsuccessfully) that he has standing to maintain his claims for the violation of various statutes.  However, each of these statutes confers a private right of action only on persons who have incurred injury.  Plaintiff, whose only claim is that TWC retained his PII and failed to send him a

---

[1] Plaintiff alleges claims for: (1) violation of section 551(e) ("Section 551(e)") of the Cable Communications Policy Act ("Cable Act"); (2) violation of section 551(a) ("Section 551(a)") of the Cable Act; (3) violation of the California Customer Records Act (Cal. Civ. Code § 1798.81) ("CCRA"); (4) breach of implied contract; and (5) violation of California Penal Code section 637.5 ("Section 637.5").

[2] *See* http://www.siprut.com/news.html#cable (last accessed December 19, 2012).

1

LOSANGELES 989090                                          TWC'S REPLY IN SUPPORT OF MOTION TO DISMISS

privacy notice after he was no longer a subscriber, can allege no such injury.  To save his claims, Plaintiff attempts to assign a subjective value to the retention of his PII, but with no precedent and to no avail.  Tellingly, Plaintiff relies entirely on cases finding injury where a defendant improperly *discloses* PII, not when it simply *retains* PII with no harm to subscribers.

Even if Plaintiff could sufficiently allege his claims, and had standing to pursue them, his claims still fail because he misconstrues the scope of the statutes under which he sues.  First, contrary to Plaintiff's overbroad interpretation of Section 551(a), it does not require cable operators to send privacy notices to former subscribers, such as Plaintiff.  Second, the CCRA section on which Plaintiff relies governs how operators must destroy PII, and not whether they must destroy PII.

For the reasons discussed in TWC's motion and herein, the Court should dismiss the complaint, and each claim alleged therein, pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

## II. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY PURSUANT TO RULES 12(B)(1) AND 12(B)(6)

### A. Plaintiff Lacks Injury to Support Article III or Statutory Standing

Plaintiff's lawsuit exemplifies why the Constitution requires Article III standing.  Knowing no real facts about TWC or its policies, Plaintiff embarks on a mission to create supposed harm where none exists.  If Plaintiff really suffered a cognizable injury as a result of TWC's conduct, he would have said so in his complaint and opposition.  Instead, Plaintiff attempts two short-cuts to Article III injury: (1) he claims a statutory violation alone imparts standing; and (2) he attempts to assign economic value to his PII.  Both attempts fail.

#### 1. Plaintiff Does Not Gain Standing Simply By Alleging Conclusory Violations of Various Statutes

Obviating the purpose of Article III, Plaintiff claims he is exempt from alleging a cognizable injury because he alleges conclusory violations of the Cable

2

Act, CCRA, and CLRA. In support, Plaintiff states correctly "the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as *granting persons in the plaintiff's position a right to judicial relief*." Opp. at 5 (citing *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)) (emphasis added). Plaintiff, however, fails to explain how any of the statutes on which he bases his claims grant someone in *his position* a right to judicial relief. These statutes grant a private right of action only to persons "aggrieved" or "injured by a violation" of the respective statute. *See* 47 U.S.C. § 551(f)(1); Cal. Civ. Code § 1798.84(b); Cal. Pen. Code § 637.2(a). Plaintiff fails to allege any such injury and thus has no right of action. *Boorstein v. Men's Journal, LLC*, No. CV 12-771 DSF (Ex), 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012) (finding where a statute requires "an injury resulting from a violation," "a violation of the statute, without more, is insufficient").

In response, Plaintiff focuses entirely on whether he has standing under his Cable Act claims, ignoring his CCRA and Section 637.5 claims.[3] As Plaintiff observes, the analysis of whether Plaintiff is "aggrieved" within the meaning of the Cable Act begins with the language of the statute itself. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 462 (2002) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'")

Here, the statute is unambiguous in its requirement that a party be "aggrieved" by a violation in order to have a private right of action. Contrary to Plaintiff's citation, Black's Law Dictionary defines "aggrieved" as "having legal rights that are adversely affected; having been *harmed* by an infringement of legal rights." Black's Law Dictionary at 77 (9th ed. 2009)[4]; *see also Sterk v. Best Buy*

---

[3] Each claim requires injury, which Plaintiff cannot establish. *See* Section III.A.2, *supra*.

[4] Plaintiff's citation to Black's Law Dictionary defines "aggrieved party" and not "aggrieved." Opp. at 12:9-12. The term "aggrieved party" is not found within the Cable Act, and, in any event, Plaintiff does not satisfy this definition.

*Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *5 (N.D. Ill. Oct. 17, 2012) ("The SCA and the VPPA require a plaintiff to be 'aggrieved,' meaning the individual has suffered an Article III injury-in-fact.").

The plain language of the statute is clear. Harm is required to be "aggrieved" under the Cable Act, and an alleged statutory violation, without injury, is not actionable.[5] In fact, in a case decided recently involving Plaintiff's counsel, but not mentioned in the opposition here, the court observed that when a statute requires a plaintiff to be "aggrieved," the "plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III." *Best Buy*, 2012 WL 5197901, at *5.

Ignoring this plain language, Plaintiff contends *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271 (6th Cir. 2006), and *Warner v. Am. Cablevision of Kansas City*, 699 F. Supp. 851 (D. Kan. 1988), "confirm" Plaintiff's standing. Contrary to Plaintiff's contention, *Klimas* does not provide a plaintiff with standing to sue merely because a Cable Act violation occurs.[6] The *Klimas* court considered standing under 47 U.S.C. section 551(b), which governs improper PII collection. 465 F.3d at 275-76. In performing its standing analysis, the Sixth Circuit observed:

> [i]n order to establish the injury in fact element of standing, the plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged…conduct…. the injury must be both concrete and

---

[5] Plaintiff's emphasis on the "any act" phrase of the Cable Act's enforcement provision to show retention claims are actionable thereunder is unnecessary. TWC does not contend a retention claim is not actionable. TWC contends a retention claim, without more (injury), is not actionable. For example, had TWC retained Plaintiff's PII in violation of the Cable Act, and a third party seized and used this information, then Plaintiff might be aggrieved by virtue of this identity theft. Here, such is not the case.

[6] Plaintiff's attempt to stretch the holdings in *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2012 WL 2873847 (N.D. Cal July 12, 2012), and *LaCourt v. Specific Media*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal Apr. 28, 2011), is not persuasive. Those cases do not stand for the proposition that unlawful retention of PII in violation of a statute automatically confers Article III standing. *Low*, 2012 WL 2873847, at *5 (addressing standing for a disclosure violation under the Stored Communications Act); *LaCourt*, 2011 WL 1661532, at *3-4 (conducted Article III analysis without reference to any alleged statutory violation).

> particularized…the injury may not be the product of speculation
> or conjecture. (internal quotations and citations omitted)

*Id.* at 276. Although, in *Klimas*, the Sixth Circuit ultimately found sufficient injury existed, the injury was based on the unauthorized collection of PII; put simply, *Klimas* was not a retention case. *Id.*

Nor is *Warner* helpful to Plaintiff's standing argument. As an initial matter, *Warner* analyzed solely whether plaintiff incurred injury due to defendant's failure to provide a privacy notice at the time he initiated his cable service. 699 F. Supp. at 858-59. "However, the existing case law only recognizes such 'informational injury' where the plaintiffs have requested information and have subsequently been denied it." *Boorstein*, 2012 WL 2152815, at *3. Plaintiff does not allege he was denied requested information here. Moreover, the *Warner* analysis did not survive appeal. The Tenth Circuit remanded *Warner* with instructions to vacate the decision, and the case settled on appeal. *See Scofield v. Telecable of Overland Park, Inc.*, 751 F. Supp. 1499, 1502 n.1 (D. Kan. 1990) (reversed by *Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874 (10th Cir. 1992)).[7]

Further, Plaintiff's attempt to distinguish *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) ("*Redbox I*"), lacks merit. In yet another case involving related claims brought by Plaintiff's counsel, in *Redbox I,* the Seventh Circuit held a damages claim for the unlawful retention of PII, without more, was not actionable under the VPPA, a statute similar to Section 551(e) and with the same purpose – to protect the privacy of consumers of video content. *Id*. at 538-39. Rejecting Plaintiff's arguments, the court found:

1. It would be illogical to award damages for the mere retention of PII, because there cannot be injury without disclosure. *Id*. at 538.
2. Although the VPPA contains a liquidated damages provision, "liquidated

---

[7] *Metrovision of Livonia, Inc. v. Wood*, 864 F. Supp. 675, 680 (E.D. Mich. 1994), which also addresses the Cable Act's privacy notice section, similarly should be ignored as it relies on *Warner's* vacated analysis.

        damages are intended to be an estimate of actual damages, and if failure of timely destruction results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating subsection (e) would be zero." (citing *Doe v. Chao*, 540 U.S. 614 (2004) (holding Privacy Act of 1974 does not allow for statutory damages absent a showing of actual damages)).[8] *Id.*

    3. The cases attempting to distinguish *Doe v. Chao* dealt with unlawful appropriation of private personal information, which is "a perceived although not a quantifiable injury," unlike any alleged injury from mere retention of PII which would be "enormously attenuated." *Id.* at 538-39.

Plaintiff attempts to differentiate this case from *Redbox I* solely on the ground that the VPPA enforcement provision's placement within the statute comes before the retention section. Opp. at 13. He does not, however, explain how that somehow nullifies the three independent grounds for the ruling discussed above. Instead, he simply dismisses these findings as dicta. They are not dicta.

In fact, *Sterk v. Redbox Automated Retail, LLC*, No. 11 C 1729, 2012 WL 3006674 (N.D. Ill. July 23, 2012) (*"Redbox II"*), which Plaintiff deems instructive, confirms *Redbox I*'s holding "as a matter of law that damages are not an appropriate remedy for any claim based on unlawful retention." *Id.* at *6; *see also Rodriquez v. Sony Computer Entm't Am. LLC*, No. C 11-4084 PJH, 2012 WL 4464563, at *1 (N.D. Cal. Sept. 25, 2012) (adopting *Redbox I* reasoning and dismissing retention claims with prejudice). Although the court found that the lack

---

[8] Plaintiff misquotes the holding in *Chao* with respect to the availability of statutory damages. The quoted text is, in fact, a position the court expressly rejected. *Chao*, 540 U.S. at 623 ("As Doe treats the text, Congress could have accomplished its object…. Doe's reading leaves the reference to entitlement to recovery with no job to do, and it accordingly accomplishes nothing."). Similarly, Plaintiff's footnote quote refutes his circular interpretation that a person is "aggrieved" automatically if there is a statutory violation, and, instead, confirms Article III injury must still exist. Opp. at 15 n.7 (*quoting Chao*, 540 U.S. at 624 ("…'adverse effect' acts as a term of art identifying a potential plaintiff *who satisfies the injury-in-fact and causation requirements of Article III standing*") (emphasis added)).

of recoverable damages did not eliminate standing because Plaintiff's "highly attenuated" injury could be redressed by the expressly authorized injunctive relief remedy under 18 U.S.C. § 2710(c)(2)(d), no similar remedy appears in the Cable Act. *See Redbox II,* 2012 WL 3006674, at *9.

### 2. Plaintiff Has Not Sustained Economic Harm

To save his claims, Plaintiff attempts to quantify some form of economic harm[9] to meet Article III's injury requirement. As discussed below, the Northern District of California recently rejected each of Plaintiff's arguments in *In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012).

First, he claims his PII has subjective economic value. Opp. at 9:24-10:10. Tellingly, Plaintiff does not cite a single case holding there is economic value in PII, and, in fact, cites a case that holds the opposite. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) ("Plaintiffs do not allege that they lost money as a result of Defendant's conduct. Instead, Plaintiffs allege that Defendant unlawfully shared their 'personally identifiable information' with third-party advertisers. However, personal information does not constitute property for purposes of a UCL claim."); *see also* Mot. at 6.

Second, Plaintiff claims he has somehow suffered economic injury because TWC's conduct "deprived him of the paid-for privacy protections he was expressly entitled to receive pursuant to his service agreement with Time Warner" and TWC's "failure to fulfill its contractual obligations resulted in a loss of…Plaintiff's full benefit of the bargain." Opp. at 8:8-17. Plaintiff does not, however, point to any alleged obligations or "paid-for privacy protections" in the Subscriber Agreement, the Privacy Notice, or elsewhere with which TWC allegedly failed to comply. Instead, he misquotes TWC's Subscriber Agreement and Privacy Policy in

---

[9] Economic injury is the loss or deprivation of money or property – an even more restrictive type of injury-in-fact. *See McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222, 1237 (C.D. Cal. 2011).

7

1  an attempt to create a promise that does not exist.  While TWC's Privacy Policy
2  acknowledges subscribers have potential claims for Cable Act violations (*see* RJN
3  [Dkt. 12], Ex. B, p. 19, § 6), it does not create a contractual promise to provide the
4  privacy protections of the Cable Act in exchange for a paid subscription.  *See*
5  *Rodriquez*, 2012 WL 4464563, at *3 (rejecting attempt to "repackage" failed
6  retention claim as a contract claim where plaintiff does not allege the parties'
7  contract expressly incorporates the VPPA).

8        The Subscriber Agreement provides "[y]ou grant us permission to collect,
9  use or disclose your personal information as described in our Subscriber Privacy
10 Notice."  RJN, Ex. A, p. 12, ¶ 11(a).  The Privacy Notice provides, with respect to
11 the retention of PII, that TWC may maintain a subscriber's PII after the subscriber
12 terminates service so TWC "can comply with tax, accounting and other legal
13 requirements.  When information is no longer needed for these purposes, it is our
14 policy to destroy or anonymize it."  RJN, Ex. B, p. 19, § 4.  Thus, TWC merely
15 explains to its subscribers that it will retain PII until no longer necessary for tax,
16 accounting, and other legal requirements.  As discussed in Section II.B below,
17 Plaintiff alleges no facts to support his claim that TWC retained his PII after TWC
18 no longer needed it for these purposes.  Thus, TWC's alleged retention of Plaintiff's
19 PII does not conflict with any express promises it allegedly made.

20       Plaintiff relies on *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010),
21 arguing it supports his position that a plaintiff suffers economic harm whenever a
22 plaintiff pays for a service and his provider fails to provide certain privacy
23 protections.  Instead, *AOL* finds only that plaintiffs who pay for a service may state
24 a claim "under certain California consumer protection statutes when a company, in
25 violation of its own policies, *discloses* personal information about its consumers to
26 the public."  *In re Facebook*, 791 F. Supp. 2d at 715 (emphasis added).  In *AOL*, the
27 defendant expressly promised it would protect the plaintiff's PII from disclosure to
28 third parties and violated that promise.  *AOL*, 719 F. Supp. 2d at 1111-12.  Here,

1  Plaintiff cannot allege TWC disclosed his PII in violation of an express agreement.
2  *Cf. Resnick v. Avmed*, 693 F.3d 1317, 1328 (11th Cir. 2012) (allowing unjust
3  enrichment claim where customers' sensitive information was stolen resulting in
4  identity theft).

5        The court in *In re Google* rejected the plaintiff's argument that Article III
6  injury exists simply from alleged violations of a company's privacy policy, and
7  confirmed personal information does not contain any independent economic value.
8  *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *5.  There, the
9  plaintiffs filed a putative class action regarding Google's adoption of a universal
10 privacy policy that eliminated the majority of its separate policies for each of its
11 products.  *Id*. at *1.  The plaintiffs claimed Google's new universal privacy policy
12 violated its previous policies and consumers' privacy rights because it allowed
13 Google to use consumers' personal information across multiple products.  *Id*. at *2.
14       The court held the plaintiffs failed to allege facts sufficient to confer Article
15 III standing and granted Google's motion to dismiss.  *Id*. at *5-6 ("plaintiffs have
16 not identified a concrete harm from the alleged combination of their personal
17 information across Google's products and contrary to Google's previous policy
18 sufficient to create an injury in fact"); *see also In re iPhone Application Litig.*, No.
19 11-MD-02250-LHK, 2011 WL 4403963, at *4-6 (N.D. Cal. Sept. 20, 2011)
20 (granting motion to dismiss because plaintiffs did not identify a concrete harm
21 sufficient to create injury in fact from the alleged unauthorized collection and
22 tracking of their personal information).  The court agreed with other courts that
23 personal information does not have sufficient independent economic value to
24 establish injury in fact and observed "nothing in the precedent of the Ninth Circuit
25 or other appellate courts confers standing on a party that has brought statutory or
26 common law claims based on nothing more than the unauthorized disclosure of
27 personal information, let alone an unauthorized disclosure by a defendant to itself."
28

9

*In re Google*, 2012 WL 6738343, at *5.  Because an "unauthorized disclosure by a defendant to itself" is akin to a mere retention claim, it is likewise not actionable.

### B. Plaintiff's Allegations Fail to State a Claim

The FRCP require more than conclusory, implausible allegations and bare recitations of the elements to state a claim.  Mot. at 9.  Regardless, here, Plaintiff claims "he must only allege" the following unadorned elements of his claims for violation of Section 551(e), the CCRA, and Section 637.5[10]:  (1) TWC collected his PII; (2) the information is no longer necessary for the purpose for which it was collected; and (3) TWC failed to destroy such information.  Opp. at 17.  Because he recited these elements, and nothing more, he claims he "satisfied his burden under Federal Rule 8(a)."  *Id*.  The Supreme Court disagrees.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

As to the first element of his claim, Plaintiff asserts he meets his burden because he alleges TWC collected certain information from him when he initiated service.  Opp. at 17.  While that may be true, he does not allege facts to support which, if any, of this information TWC allegedly retained unnecessarily after Plaintiff canceled his service.  Absent specific allegations, TWC cannot evaluate the merits of Plaintiff's claims or TWC's potential defenses.

As to the second and third elements of his claims, Plaintiff's "support" for the sufficiency of such allegations is even more lackluster.  Plaintiff simply claims he meets his pleading burden because "he alleges that despite no longer needing his PII, Time Warner continues to retain it" and "Time Warner's practice is to retain the PII indefinitely."[11]  Opp. at 18.  Plaintiff's hollow accusations are impermissibly

---

[10] Plaintiff also fails to allege sufficiently his second claim for violation of Section 551(a).  Absent plausible, non-conclusory, factual allegations that TWC retained Plaintiff's PII, his claim that he did not receive a privacy notice necessarily fails.  Mot. at 14.  Plaintiff impliedly concedes this deficiency by failing to address the argument in his opposition.

[11] The paragraphs of the complaint cited by Plaintiff are not relevant to his conclusory allegations.  *See* Compl., ¶ 23 (the CCPA prohibits indefinite retention of PII), ¶¶ 24, 38 (TWC failed to provide privacy notices to former subscribers), ¶

conclusory and devoid of facts to assure this Court a plausible basis exists for liability. Mot. at 11-13; *Kemp v. Int'l Bus. Machs. Corp.*, No. C-09-4683 MHP, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010).

Tellingly, Plaintiff's opposition does not point to a single factual allegation that TWC's practice is to retain users' PII indefinitely. To the contrary, the only factual allegation concerning TWC's retention practices is that its Privacy Policy provides TWC "maintain[s] personally identifiable information about subscribers *for as long as it is necessary for business purposes*," not indefinitely. Compl., ¶ 21 (emphasis added). In the face of this alleged policy, Plaintiff's conclusory allegation that TWC maintains PII indefinitely is implausible. Because Plaintiff does not allege "more than a sheer possibility" of misconduct, the Court should dismiss his claims. *See Iqbal*, 556 U.S. at 678.

Plaintiff attempts to distinguish *Kemp* on the ground that the plaintiff there "failed to allege *any* factual allegations to support his speculation," but, here, Plaintiff ignores that he is in the exact same, if not a worse, position. Opp. at 18. In support of his claim that the defendant violated laws requiring the retention of employment records, the plaintiff in *Kemp* at least alleged he attempted to obtain his own records, but could not do so. 2010 WL 4698490 at *4.[12] Here, Plaintiff does not allege he took any action to determine whether or the extent to which TWC allegedly maintained his PII.[13]

---

42 (the sub-classes shall be referred to collectively as the "Class"), ¶ 58 (the CCPA provides a private right of action).

[12] Plaintiff also tries unsuccessfully to distinguish his allegations from those in *Essex Ins. Co. v. Miles*, No. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010), where the court confirmed allegations, such as Plaintiff's, "predicated only on 'information and belief,'" were "merely 'a formulaic recitation of the elements of a cause of action'" (citing *Iqbal*, 556 U.S. 678).

[13] Plaintiff alleges for the first time in a footnote that he contacted TWC prior to filing this suit and was informed his personal information "would not go away." Opp. at 18 n.9. Plaintiff may not go beyond his complaint to save a pleading that would not otherwise survive a facial attack. *Johnson v. Homecomings Fin.*, No. 09-CV-1262-NLS, 2012 WL 1357675, at *2 (S.D. Cal. April 19, 2012).

11

Equally conclusory and implausible is Plaintiff's allegation that TWC no longer needs PII after a subscriber cancels his service. Mot. at 13. Common sense dictates otherwise. Certain information is necessary for tax, accounting, and legal purposes, making any allegation that PII is relevant only for the purposes of providing and collecting payment simply implausible. *Iqbal*, 556 U.S. at 679. Rather than point to facts that support the plausibility of his allegation that TWC retained PII after it was no longer necessary, Plaintiff attempts to turn his pleading burden on its head, claiming somehow TWC has the burden to provide "reasons for *why* it needs this information," and this is a premature question of fact.[14] Opp. at 19. Plaintiff cannot avoid or delay his burden to allege plausibly that TWC maintained PII after it was no longer necessary for business purposes. *See Crain v. Credit Prot. Ass'n*, No. 3:09-CV-2353-D, 2010 WL 1223127, at *3 (N.D. Tex. Mar. 2, 2010) (dismissing claim alleging defendant improperly obtained his credit report "where [p]laintiff has alleged no facts to support a claim that [defendant] lacked a legitimate business need. This failure is fatal to [p]laintiff's claim against [d]efendant.").

Absent factual allegations that retention of PII was not necessary after termination of service, the plausible "obvious alternative explanation" is that retention of PII was necessary, and legally required for tax, accounting and legal purposes. Mot. at 13. The only court of which TWC is aware to quantify the amount of time companies could necessarily retain PII under Section 551(e) held that retention for six years did not violate the statute. *Warner,* 699 F. Supp. at 858.

---

[14] *In re Hulu Privacy Litig.*, No. C-11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012), does not apply and actually illustrates the insufficiency of Plaintiff's allegations. There, the plaintiffs alleged the defendant improperly disclosed their data to third parties. *Id*. at *2. As one of its affirmative defenses, the defendant argued such disclosure occurred within its ordinary course of business. *Id*. at *6. The court found the allegations sufficient to raise a question of fact on this issue, because the plaintiffs alleged specifically what the defendant did, identified the third parties, and gave specific examples of the defendant's conduct. *Id*. at *7. By contrast, here, Plaintiff, not TWC, has the burden of establishing TWC retained his data after it was no longer necessary, and his allegations are far inferior to those made by the plaintiffs in *Hulu*.

Indeed, Internal Revenue Service regulations provide for a six-year statute of limitations in connection with tax reporting claims. *See* 26 U.S.C. § 6501(e)(1).

### C. Section 551(a) Does Not Apply to Former Subscribers

Section 551(a) requires TWC to provide yearly notices to "a subscriber." 47 U.S.C. § 551(a). By definition, the term "subscriber" means someone who pays for and receives a service. Mot. at 15; *see, e.g.*, 47 U.S.C. § 338(k)(9), incorporating 17 U.S.C. § 122(j)(6). Yet, Plaintiff alleges TWC failed to provide him a notice *after* he stopped receiving service and was no longer a subscriber. Compl., ¶ 38. The language of the statute itself demonstrates Section 551(a) does not apply to Plaintiff, and the Court should dismiss his second claim. Plaintiff does not offer the Court an alternative construction of the statute or its definition of "subscriber." Nor does Plaintiff contend the language of the statute is ambiguous. The Court cannot, as Plaintiff suggests, ignore the statutory language and find Section 551(a) applies to non-subscribers. The plain meaning of the statute controls.[15] *SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003).

Plaintiff's argument that the failure to apply Section 551(a) to former subscribers "would allow cable providers to indefinitely retain their former subscribers' information, and disclose the information to anyone they please" is nonsense. Opp. at 16. Unchecked disclosure and retention of subscribers' PII is already prohibited by sections 551(d) (disclosure) and (e) (retention) of the Cable Act.

### D. The CCRA Does Not Apply to the Retention of PII

Plaintiff takes similar liberty with his statutory construction of the CCRA. Mot. at 15-16. Although the CCRA unambiguously regulates only the "disposal of customer records," Plaintiff asks this Court to broaden its scope so the CCRA applies to the retention of PII. Opp. at 20. Plaintiff does not cite a single case that

---

[15] If Congress wanted the statute to apply to "former subscribers," or "all consumers for whom PII is retained," it would have used that language. It did not.

applied the CCRA in this fashion and acknowledges his interpretation of the CCRA has been squarely rejected by multiple courts. *Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587, at *5 (N.D. Cal. Nov. 20, 2012); *Doe 1 v. AOL LLC*, 719 F.Supp.2d 1102, 1114 (N.D. Cal. 2010). Plaintiff's argument that a plain interpretation of the CCRA would disincentivize the destruction of PII is absurd, as there are other statutes imposing obligations regarding data retention (not to mention practical considerations). *Frezza*, 2012 WL5877587, at *5.

### III. PLAINTIFF'S PROPOSED AMENDMENT WOULD BE FUTILE

In response to TWC's motion, Plaintiff voluntarily withdrew his fourth claim for breach of implied contract and seeks leave to amend his complaint to add a claim for breach of express contract based on TWC's "Privacy Provision."[16] Opp. at 22 n.14. However, because a claim for breach of contract requires a showing of damages, and because unlawful retention of PII does not as a matter of law cause any damages (*see supra* at II.A), amendment of Plaintiff's complaint to add such a claim would be futile. His request for leave should be denied. Moreover, as discussed above, nothing in TWC's policies prohibits the alleged conduct at issue in this case. *See supra* at II.A.2.

### IV. CONCLUSION

For the reasons stated in the Motion and herein, the Court should dismiss Plaintiff's Complaint, and each claim alleged therein, in its entirety.

Dated: February 8, 2013         WHITE & CASE LLP

By: */s/Bryan A. Merryman*
      Bryan A. Merryman

Attorneys for Defendant
TIME WARNER CABLE INC.

---

[16] TWC assumes Plaintiff is referring to its Subscriber Agreement (RJN [Dkt. No. 12], Ex. A), or Privacy Notice (*Id.* at Ex. B).

14