**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 12-06764 JGB (AJWx)                    Date: March 20, 2013

Title:      TODD BURTON -*v*- TIME WARNER CABLE INC.
===========================================================
PRESENT:        HONORABLE JESUS G. BERNAL, U.S. DISTRICT JUDGE

      Maynor Galvez                          None Present
      Courtroom Deputy                       Court Reporter


PROCEEDINGS:        ORDER GRANTING MOTION TO DISMISS (Doc. No. 10)
                    (IN CHAMBERS)


      On March 18, 2013, a hearing was held on Defendant Time Warner Cable Inc.'s Motion to Dismiss ("MTD") (Doc. No. 10) against Plaintiff Todd Burton, on behalf of himself and all others similarly situated.  Having considered all papers and the arguments presented at the hearing in support of and in opposition to the MTD, the Court GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND.

//

//

## I. BACKGROUND

MINUTES FORM 11                                 Initials of Deputy Clerk __MG__
CIVIL -- GEN                      Page 1

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

Plaintiff Todd Burton ("Burton") brings this class action against Defendant Time Warner Cable, Inc. ("TWC").  On August 7, 2012, Plaintiff filed a complaint alleging TWC continues to indefinitely maintain personally identifiable information on all of its previous customers.  (Compl., Doc. No. 1, ¶ 2.)  In addition, Plaintiff alleges that TWC fails to send annual privacy notices to former customers informing them that TWC continues to retain their information.  (Compl., ¶ 3.)

Plaintiff claims he signed up for cable services with TWC on or about August 2002.  (Compl., ¶ 35.)  In order to activate his service, Plaintiff avers that TWC required him to provide various forms of personally identifiable information ("PII"), including his address, home and work telephone numbers, social security number, and credit card information.  (Compl., ¶ 35.)  Plaintiff cancelled his Time Warner service in or about December 2009.  (Compl., ¶ 36.)  Plaintiff alleges that "[o]n information and belief," TWC still retains Plaintiff's PII.  (Compl., ¶ 37.)  Moreover, Plaintiff alleges he has never received notice from TWC informing him that it still retains his PII.  (Compl., ¶ 38.)

TWC provides cable television, DVR, and digital phone services.  (Compl., ¶ 18.)  Plaintiff alleges that TWC requests that subscribers provide several forms of PII in order to receive cable service.  (Compl., ¶ 19.)  Plaintiff alleges that once TWC obtains PII, it maintains a digital record system with every subscriber's personal information.  (Compl., ¶ 20.)  Plaintiff cites TWC's Privacy Policy which provides that:

> "TWC maintain[s] personally identifiable information about subscribers for as long as it is necessary for business purposes.  This period of time may last as long as you are a subscriber, and if necessary, for additional time so that we can comply with tax, accounting and other legal requirements.  When information is no longer needed for these purposes, it is our policy to destroy or anonymize it."

(Compl., ¶ 21.)  Plaintiff claims TWC fails to destroy PII after it is no longer needed, and instead, retains consumers' PII indefinitely.  (Compl., ¶ 22.)  In addition, Plaintiff alleges, TWC fails to provide privacy notices to customers whose accounts have

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

been closed, but whose PII is still retained by TWC. (Compl., ¶ 24.)

Plaintiff brings five claims on behalf of himself and all others similarly situated against Defendant TWC.  Plaintiff brings claim one under 47 U.S.C. § 551(e) of the Cable Communications Policy Act ("CCPA").  (Compl., ¶¶ 50-50.)  Plaintiff brings claim one on behalf of a class defined as: "All persons in the United States who signed up for cable service with Time Warner, and whose personally identifiable information was retained by Time Warner after the termination of services." ("Retention Class," Compl., ¶ 39.)  Claim two alleges TWC failed to provide yearly privacy notices to former customers as required by § 551(a) of the CCPA.  (Compl., ¶¶ 61-70.)  Claim two is brought on behalf of the "Notice Class" defined as: "All persons in the United States who signed up for cable service with Time Warner, and who were never issued annual written notices from Time Warner regarding Time Warner's retention or disclosure fo their personally identifiable written information." (Compl., ¶ 40.)

Claims three, four, and five are brought on behalf of the "California State Class" defined as "All persons residing in the State of California who signed up for cable service with Time Warner, and whose personally identifiable information was retained by Time Warner after the termination of service."  (Compl., ¶ 41.)  Claim three alleges TWC violated of Cal. Civ. Code § 1798.8 under the California Customer Records Act ("CCRA").  (Compl., ¶¶ 71-80.)  Claim four alleges that TWC breached an implied contract between the California State Class and TWC. (Compl., ¶¶ 81-92.)  Finally, claim five alleges violation of Cal. Penal Code § 637.5. (Compl., ¶¶ 93-101.)

On September 17, 2012, TWC filed a motion to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (MTD, Doc. Nos. 10. 11.)  TWC also filed a Request for Judicial Notice of four documents.  ("RJN," Doc. No. 12.)  Plaintiff filed an opposition to the MTD on December 17, 2012.  (Opp'n, Doc. No. 24.)  TWC replied on February 8, 2013.  (Reply, Doc. No. 34.)

## II. LEGAL STANDARD

## A.    Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.   Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint – as well as any reasonable inferences to be drawn from them – as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

## B.    Dismissal Under Rule 12(b)(1)

An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  To satisfy Article III standing, plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561–62 (1992).  A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998).  In that event, the suit should be dismissed under Rule 12(b)(1).  See id. at 109–110. At least one named plaintiff must have suffered an injury in fact.  See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir.2003) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

## III. DISCUSSION

## A.    Request for Judicial Notice

TWC requests that the Court take judicial notice of the following four documents: (a) Time Warner Cable Residential Services Subscriber Agreement ("Subscriber Agreement," Doc. No. 12-1, Exh. A); (b) Time Warner Cable Subscriber Privacy Notice ("Privacy Notice," Doc. No. 12-2, Exh. B); (c) Class Action Complaint, Bayer et al. v. Comcast Cable Communications, LLC, No. 3:12-cv-02826-JCS (N.D. Cal. June 1, 2012) ("Comcast Complaint," Doc. No. 12-3, Exh. C); and (d) Class Action Complaint, Hodsdon et al. v. DirectTV, LLC, No. 3:12-cv-02827-JSW (N.D. Cal. June 1, 2012) ("Direct TV Complaint," Doc. No. 12-4, Exh. D).  (RJN, Doc. No. 12.)

Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001).  However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute."  Intri–Plex Technologies, Inc. v. Crest Group Inc., 499 F.3d 1048, 1052 (9th Cir.2007) (quoting Lee, 250 F.3d at 689).  Plaintiff has not opposed Defendant's request or disputed the authenticity of these documents.

The Court GRANTS TWC's requests for judicial notice of the four documents. The Court may take judicial notice of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).)  The complaint directly quotes from the Privacy Notice, but does not attach the document as an exhibit.  (Compl., ¶ 21.)  Therefore, the Court GRANTS Defendant's request to take judicial notice of the Privacy Notice.  The complaint also alleges that Plaintiff entered into an implied contract with TWC by "subscrib[ing] to Time Warner's cable service."  (Compl., ¶ 82.)  At other points in the complaint, Plaintiff claims he and the putative class "signed up for," "purchased," or "subscribed" to TWC's cable services.   (Compl., ¶ 35, 56, 66, 77, 99.)  Defendant asserts, and Plaintiff does not dispute, that subscribers to TWC's cable service are governed by the Subscriber Agreement.  (RJN at 3.)  Since the Subscriber Agreement is central to Plaintiff's claims, the Court GRANTS Defendant's request for judicial notice.  See Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998)

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

("Although we have yet to apply [the <u>Branch</u>] rule to documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint, such an extension is supported by the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based . . . .").  The Court also GRANTS Defendant's request to judicially notice the Comcast Complaint and DirectTV Complaint because they are matters of public record.  <u>See</u> <u>Hanson v. Firmat</u>, 272 F. App'x 571, 572 (9th Cir. 2008) ("[C]ourts may take judicial notice of documents in the public record."); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 fn. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

## B.    Voluntary Dismissal of Implied Contract Claim

Initially, the Court notes that Plaintiff has abandoned his fourth claim for breach of implied contract.  In that claim, Plaintiff alleged that when he and the members of the California Class provided their personal data to TWC they entered into an implied contract.  (Compl., ¶ 83.)  As part of that implied contract, Plaintiff alleges that TWC was obligated to comply with industry standards, including retention and disposal policies for Plaintiff's PII.  (Compl., ¶¶ 83-85.)  In addition, Plaintiff asserts that the laws existing at the time and place of the contract, including the CCPA and the CCRA, were incorporated into the implied contract.  (Compl., ¶ 86.)

In its MTD, TWC submits that the Subscriber Agreement and Privacy Notice are the "express contract[s] govern[ing] TWC's obligations with regard to subscriber data."  (MTD at 16; RJN, Exhs. A, B.)  Therefore, Plaintiff's implied contract claim cannot survive because an express contract governs the same subject matter. <u>Roots Ready Made Garments Co. v. Gap, Inc.</u>, 405 Fed. App'x. 120, 123 (9th Cir. 2010) (citing <u>Lance Camper Mfg. Corp. v. Republic Indem. Co.</u>, 44 Cal.App.4th 194, 203 (1996).

On these grounds, Plaintiff agrees to voluntarily dismiss his implied contract claim.  (Opp'n at 22 n.14.)  Plaintiff also seeks leave to amend the complaint to replace the implied contract claim with one for breach of the express contract under the Subscriber Agreement and Privacy Notice.  (<u>Id.</u>)  Since, for the reasons

12-cv-06764 JGB (AJWx)
**TODD BURTON v. TIME WARNER CABLE, INC.**
**BENCH MEMO of March 19, 2013**

discussed below, the Court finds that Plaintiff must replead the other allegations in the complaint to survive Rule 12(b)(1), the Court GRANTS Plaintiff's request for leave to amend his complaint to plead a breach of express, as opposed to implied, contract.   Plaintiff shall amend the implied contract claim in conjunction with the amendments described below.  The Court will not address any of the arguments TWC put forth in its MTD as to the implied contract claim, or the potentially amended express contract claim, until that claim is properly before the Court.

## C.    Article III Standing

Plaintiff's four remaining claims are statutory.  Plaintiff pleads two claims under CCPA, 47 U.S.C. § 551 for retention of PII and lack of notice.  The final two are state law claims for retention of PII under the CCRA, Cal. Civ. Code § 1798.8 and the Cal. Penal Code § 637.5.  Plaintiff seeks damages as a remedy for all four claims.

TWC moves to dismiss these claims on the basis that: (1) Plaintiff lacks Article III standing under Rule 12(b)(1); (2) Plaintiff fails to allege an injury sufficient to establish statutory standing under Rule 12(b)(6); (3) the complaint is conclusory or implausible; and (4) Plaintiff's claims under § 551(a) and the CCRA fail as a matter of law.

Because the Court finds that Plaintiff lacks Article III standing to pursue his claims, it does not reach TWC's second, third, or fourth arguments for dismissal.

### 1.    Injury

To establish Article III standing, Plaintiff must demonstrate that he satisfies three irreducible requirements: (1) he has suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."
Lujan, 504 U.S. 555, 560–61 (1992) (internal citations, quotation marks, and

MINUTES FORM 11                                  Initials of Deputy Clerk __MG__
CIVIL -- GEN                    Page 8

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

alterations omitted); <u>accord</u> <u>Friends of the Earth</u>, 528 U.S. 167, 180–81 (2000).  In a class action, named plaintiffs representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." <u>Gratz v. Bollinger</u>, 539 U.S. 244, 289 (2003) (internal quotation marks and citations omitted).  Here, there is no dispute that Plaintiff satisfies the second and third requirements of constitutional standing.  Solely at issue is whether Plaintiff has properly alleged injury-in-fact.

The injury required by Article III can exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing." <u>Edwards v. First Am. Corp.</u>, 610 F.3d 514, 517 (9th Cir. 2010) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975)). In such cases, the "standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." <u>Id.</u> (quoting <u>Warth</u>, 422 U.S. at 500).  Although "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n. 3 (1997), a plaintiff may be able to establish constitutional injury in fact by pleading a violation of a right conferred by statute so long as he can allege that the injury he suffered was specific to him, <u>see</u> <u>Warth</u>, 422 U.S. at 501.  Thus, the Court must look to the statutes to determine whether they prohibited TWC's conduct. If they did, Plaintiff has demonstrated an injury-in-fact.  <u>See</u> <u>Edwards</u>, 610 F.3d at 517.

The CCPA, CCRA and Cal. Penal Code prohibit the retention of personal information by businesses, and, more specifically in the case of the CCPA and CCRA, cable operators.  The CCPA also mandates that cable operators provide notice regarding the PII previously collected.  Each statute explicitly creates a private right of action for claims of retention and failure to provide notice.  <u>See</u> 47 U.S.C. § 551(f)(1) ("Any person aggrieved by any act of a cable operator in violation of this section may bring a civil action . . . ."); Cal. Civ. Code § 1798.84(b) ("Any customer injured by a violation of this title may institute a civil action to recover damages."); Cal. Penal Code § 637.5(i) ("Any aggrieved person may commence a civil action for damages for invasion of privacy . . . .").  By alleging a violation of these statutorily created rights, Plaintiff satisfies Article III's injury-in-fact requirement.

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

TWC argues that the alleged statutory violations are insufficient to overcome the Article III standing requirement because each statute requires an independent injury resulting from the violation.  TWC points to the use of the words "aggrieved" and "injured" in the private right of action provisions to support their argument that an injury apart from the statutory violation must be alleged to establish Article III standing.  (MTD at 6-7.)  However, Ninth Circuit case law directly refutes TWC's argument.

In Jewel v. Nat'l Sec. Agency, 673 F.3d 902 (9th Cir. 2011), the Ninth Circuit held that alleged violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), and the Foreign Intelligence Surveillance Act ("FISA") were sufficient to constitute an injury-in-fact for constitutional standing. The private right of action provisions for the FISA and SCA both include the term "aggrieved," nevertheless, the court found that they conferred a concrete injury.  Id. at 908 ("SCA provides that 'any provider of electronic communication service, subscriber, or other person *aggrieved* by any violation of this chapter' may maintain a civil action if the violation was done knowingly or intentionally.") (emphasis added). In accordance with Jewel, the Court does not find that the inclusion of the words "aggrieved" or "injured" in the statutory language changes the outcome of the injury inquiry. Thus, Plaintiff has articulated harm which is sufficient to constitute an injury for the purposes of Article III standing.  See also Low v. LinkedIn Corp., 11-CV-01468-LHK, 2012 WL 2873847 (N.D. Cal. July 12, 2012) (holding a violation of the SCA sufficient to confer injury); In re Hulu Privacy Litig., C 11-03764 LB, 2012 WL 2119193, at *8 (N.D. Cal. June 11, 2012) ("Plaintiffs establish an injury (and standing) by alleging a violation of [the Video Privacy Protection Act] statute" which includes the term "aggrieved" in the subsection granting a private right of action).

Jewel goes so far as to state that the Article III  requirement that the injury be "concrete" can exist solely by virtue of statutes creating legal rights.  Jewel. 673 F.3d at 908.  Thus, the alleged violations of the CCPA, CCRA and California Penal Code satisfy the requirement that Plaintiff allege a concrete injury.  Id. at 909.

### a.    Particularized and Actual or Imminent

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

A finding that statutory violations constitute a concrete injury does not end the Article III standing inquiry.  Plaintiff's injury must also be "particularized" as well as "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560-61.  See Fraley v. Facebook, Inc., 830 F. Supp. 2d 785 (N.D. Cal. 2011) (examining whether the plaintiffs established that the injury was sufficiently particularized and actual or imminent after finding that a violation of a statute created an injury); Gaos v. Google Inc., 5:10-CV-4809 EJD, 2012 WL 1094646, at *3-4 (N.D. Cal. Mar. 29, 2012) (same).  Lujan further defines that "[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way."  Lujan, 504 U.S. at 561 n.1.  Plaintiff must therefore allege a particularized and actual or imminent injury resulting from TWC's alleged retention of Plaintiff's PII and its failure to provide him with notice that TWC retained this information.

The Court finds that the Complaint fails to identify an injury that is actual or imminent and particularized.  Plaintiff claims to have suffered three specific injuries as a result of TWC's retention of his PII and the failure to issue timely notices.  The Court addresses each of these proffered injuries in turn.  The Court recognizes that there is no Ninth Circuit authority directly on point on the issue presented here.  However, several U.S. District Courts in this Circuit have thoroughly addressed similar issues that are instructive.[1]

_____

[1] On March 12, 2013, Plaintiff provided the Court with notice of a recent decision in Freas v. RCN Corp., No. 12 C 4254 (N.D. Ill. Mar. 4, 2012).  (Doc. No. 38.)  Plaintiff attached a transcript of oral argument held before Judge Feinerman in the Northern District of Illinois.  (Transcript, Doc. No. 38-1.)  The Court notes that the Freas court faced the same issues under Section 551 of the Cable Act and found that plaintiff had sufficiently alleged facts to confer Article III standing.  (Transcript at 36-37.)  However, the Freas decision is merely persuasive authority, as it is a holding by district court outside of the Ninth Circuit.

In this instance, the Court finds that Freas is only minimally persuasive, as it relies on a Seventh Circuit decision, Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535 (7th Cir. 2012), which implicitly held that an "enormously attenuated" injury could be established solely from the failure to destroy private information lawfully obtained and not disclosed.  Id. at 538.  No similar Ninth Circuit decision exists.  In

(continued...)

MINUTES FORM 11                                          Initials of Deputy Clerk   MG
CIVIL -- GEN                              Page 11

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

### i.     Lack of Control Harm

First, Plaintiff alleges that TWC's actions have deprived him of his "ability to make informed decisions with respect to [his] privacy."  (Compl., ¶¶ 55, 65, 76, 98.)  The Court finds that this alleged injury is highly attenuated.  Although not clearly described in Plaintiff's complaint or opposition, the Court infers that Plaintiff contends that since TWC retains Plaintiff's PII, Plaintiff is unable to informatively decide how to use his own personal information.  Unless there is some allegation of disclosure or improper use of Plaintiff's PII, it is unclear how TWC's alleged retention of Plaintiff's PII affects his ability to make informed privacy decisions regarding his personal information.  Moreover, Plaintiff has not alleged which, if any, privacy decisions were impaired by TWC's retention.  Plaintiff has not sufficiently alleged a link between TWC's acts and his injury to move it from hypothetical to actual.  <u>See</u> <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 960-61 (9th Cir. 2009) (finding lack of standing because the alleged injury was "conjectural and hypothetical").

To the extent Plaintiff's proffered injury is intended to redress the harm created by TWC's failure to provide a privacy notice, this argument was decided by the court in <u>Boorstein v. Men's Journal LLC</u>, CV 12-771 DSF EX, 2012 WL 2152815 (C.D.

---

[1](...continued)
fact, several district courts in the Circuit have held that plaintiff had not established an actual and particularized injury where defendant collected, tracked, or even disclosed plaintiff's personal information.  <u>See, e.g.,</u> <u>LaCourt v. Specific Media, Inc.</u>, SACV 10-1256 GW JCGX, 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011); <u>Low v. LinkedIn Corp.</u>, 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011).  Thus, in the Ninth Circuit, the theory that an injury-in-fact exists where defendant merely retains plaintiff's personal information is even less plausible.

Similarly, the <u>Freas</u> court relied on a Seventh Circuit decision, <u>In re Aqua Dots Products Liab. Litig.</u>, 654 F.3d 748, 750-51 (7th Cir. 2011), where the court found that allegations under a benefit of the bargain theory of damages can satisfy Article III standing.  In Section C.1.a.ii *infra*, the Court finds that this theory of economic harm is not viable under district court case law in the Ninth Circuit.

Due to the substantial difference in precedent, the Court finds that the <u>Freas</u> decision does not compel a similar outcome here.

Cal. June 14, 2012).  Under this theory, Plaintiff alleges his ability to make informed decisions regarding his privacy was harmed by TWC's failure to provide a statutorily required privacy notice informing him that it maintained his PII.  In Boorstein, the court noted that the law only recognizes such an "informational injury" where the plaintiff has requested information and has subsequently been denied it.  Id. at *3. Here, Plaintiff does not allege that he requested that TWC provide him with a privacy notice or asked it to disclose the PII it retains.  Accordingly, Plaintiff has not alleged a particularized informational injury resulting from TWC's failure to provide a privacy notice.

Plaintiff's theory of injury due to lack of notice can also be rejected on the basis that it constitutes a "mere procedural injury."  Boorstein, 2012 WL 2152815, at * 4 ("[A] cognizable informational injury must be distinct from a mere procedural injury.") (internal quotation omitted).  In Wilderness Society, Inc. v. Rey, 622 F.2d 1251 (9th Cir. 2010), the court found plaintiffs lacked standing to challenge a Forest Service regulation which limited the availability of notice, finding that "Congress's purpose in mandating notice in the context of the [statute] was not to disclose information, but rather to allow the public opportunity to comment on the proposals." Id. at 1259.  In other words, the court found that the right to notice granted the public a right to process and participation, and not a right to information per se; thus, violation of the right to notice was a procedural injury that did not confer standing. Id.  The same is true of the notice statutes at issue here.  As Plaintiff goes to great lengths to emphasize, the purpose of the CCPA is to protect consumers' privacy. (Compl., ¶¶ 10-13.)  Thus, as in Wilderness, the purpose of the statutory right to notice regarding the personal information collected by TWC is to protect consumers' privacy, not to provide a right to information per se.  As such, violation of the privacy notice requirement is analogous to the procedural injury in Wilderness and does not satisfy Article III standing.

Moreover, Plaintiff has not alleged that he personally was unable to make a decision regarding his PII pursuant to the acts of TWC.  Thus, there is no showing that this alleged injury affected Plaintiff in a personal or individual way. Lujan, 504 U.S. at 561 n.1.  In Birdsong, 590 F.3d at 960-61, the Ninth Circuit found that since the plaintiffs had not alleged an injury to themselves, they lacked standing.  There, Plaintiffs complaint claimed that Apple's iPod had a capacity to produce sound as

12-cv-06764 JGB (AJWx)
**TODD BURTON v. TIME WARNER CABLE, INC.**
**BENCH MEMO of March 19, 2013**

loud as 120 decibels creating a risk of hearing loss, however "[t]he plaintiffs do not claim that they suffered or imminently will suffer hearing loss from their iPod use." Id. at 960.  The court held that "plead[ing] a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might choose to use their iPods in an unsafe manner" was insufficient to create a concrete and particularized injury. Id.  Just as in Birdsong, Burton does not put forth facts showing that he, or any other class member, suffered from the inability to make an informed decision regarding his PII.  Instead, he alleges that all class members suffer this generalized injury.  Here, the sole named plaintiff has not adequately plead an injury in fact as to him, thus constitutional standing is not satisfied.  See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F. 3d 1018, 1022 (9th Cir. 2003) ("If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

### ii.   Economic Harm

Plaintiff alleges two, similar, theories to establish that TWC's retention of his personal information and failure to provide notice caused him economic harm.  To support these injuries, Plaintiff alleges that he ascribes monetary value to his ability to control his PII.  (See, e.g., Compl., ¶ 56.)  For his first economic injury, Plaintiff contends that he purchased cable services from TWC, and TWC's failure to destroy his PII and provide notice deprives him of the "full value of the services that [he] bargained and paid for."  (Compl., ¶¶ 56, 66, 77, 99.)  The second economic injury alleges that Plaintiff's PII constitutes personal property, and TWC's failure to comply with the statutes deprives him of the opportunity to control that personal property for his own financial gain.  (Compl., ¶¶ 57, 67, 78, 100.)

Plaintiff's attempt to plead that he has suffered a particularized and imminent economic injury as a result of TWC's mere retention of his personal information poses substantial hurdles.  As several district courts have noted, "nothing in the precedent of the Ninth Circuit or other appellate courts confers standing on a party

12-cv-06764 JGB (AJWx)
**TODD BURTON v. TIME WARNER CABLE, INC.**
BENCH MEMO of March 19, 2013

that has brought statutory or common law claims based on nothing more than . . . an unauthorized disclosure by a defendant to itself."  In re Google, Inc. Privacy Policy Litig., C 12-01382 PSG, 2012 WL 6738343 (N.D. Cal. Dec. 28, 2012).  Implicit in Plaintiff's theories of economic harm is the notion that if TWC retains his lawfully obtained personal information, its financial value to him is somehow diminished.  However, Plaintiff provides no evidence to support that theory either to him personally or more generally.  Plaintiff cites surveys and academic publications which show that consumers place a monetary "value[ on] the restriction of improper access to their data . . . and prohibiting secondary use," however, these are not issues here.  (Compl., ¶ 33.)  Plaintiff does not argue that TWC improperly accessed his data or allowed others to access or use it, but only that TWC improperly retained his data after it was lawfully obtained.   Thus, Plaintiff's theory of economic injury is highly conjectural.  See Boorstein v. Men's Journal LLC, CV 12-771 DSF EX, 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012) ("Because the violation alleged by Plaintiff was not the cause of the purported economic injury, this theory does not provide Plaintiff with statutory standing to sue.").  Even if Plaintiff's theory were sound, he does not connect these general allegations to facts relating to the value of his personal information.

Numerous district courts have found that generalized allegations that personal information has independent economic value are insufficient to state a  particularized injury for purposes of Article III standing.  Plaintiff must demonstrate that he experienced a particularized injury to the alleged economic value of his personal information.  In Low v. LinkedIn Corp., plaintiff alleged that the website LinkedIn "allows the transmission" of users' personally identifiable browsing history to third parties, potentially enabling them to link that information to plaintiff's personal identity in violation of several state and federal statutes.  11-CV-01468-LHK, 2011 WL 5509848, at *1 (N.D. Cal. Nov. 11, 2011).  The court held that there was not a sufficient injury in fact because plaintiff failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was deprived of the economic value of his personal information simply because it was purportedly collected.  Id. at *5.  See also Murray v. Time Inc., C 12-00431 JSW, 2012 WL 3634387, at *4 (N.D. Cal. Aug. 24, 2012) ("Murray does not connect these general allegations to facts relating to the value of his personal information. Murray also has

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

not alleged that, if [Defendant complied with the statute], he would have attempted to sell his information and lost the opportunity to do so.").

Like in <u>Low</u> and <u>Murray</u>, Burton does not allege that his PII was actually transmitted to any third parties, nor does he allege that TWC's retention of his PII prevented him from selling his PII to others.  Nor has Burton made any showing that TWC's retention of his personal information reduced its value to him personally.  In a similar case, <u>La Court v. Specific Media, Inc.</u>, the court found that plaintiffs' purported injury – that defendant had deprived plaintiffs of the economic value of their personal browsing history by taking and retaining it from their computer using cookies – was too speculative to constitute an injury.  SACV 10-1256 GW JCGX, 2011 WL 1661532, at *4 (C.D. Cal. Apr. 28, 2011).  The <u>Specific Media</u> court's reasoning applies directly here, where the "Complaint does not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of [TWC's] alleged conduct."  <u>Id.</u> at 5.  Plaintiff therefore has not sufficiently claimed that he has suffered a particularized economic injury as a result of TWC's retention of his PII.

Burton makes much of the fact that he purchased TWC's cable services, unlike the free services provided in <u>LinkedIn</u> or <u>Specific Media</u>.  However, the Court finds this distinction irrelevant.  Whether or not Burton paid for the underlying services, Burton alleges, as he must to support a theory of economic harm, that his PII has economic value.  Since the Court agrees with many other district courts that Burton has failed to allege any particularized harm to the economic value of his PII, the economic value of the underlying cable service is similarly undisturbed.      In support of his claim that particularized economic injury can be found for paid services, Burton points to <u>In re Facebook Privacy Litigation</u>, 791 F. Supp. 2d 705 (N.D. Cal. 2011), where the court noted that a "plaintiff who is a consumer of certain services (i.e., who 'paid fees' for those services) may state a claim under certain California consumer protection statutes when a company . . . discloses personal information about its consumers."  <u>Id.</u> at 715.  However, as the quoted passage suggests, the <u>Facebook</u> court was discussing whether the complaint sufficiently alleged a claim under California's Unfair Competition law, not whether it alleged a particularized injury for purposes of Article III standing.  Thus, it has no relevance to the Court's decision here.  <u>See also Doe 1 v. AOL, LLC</u>, 719 F. Supp. 2d 1102, 111

MINUTES FORM 11                                          Initials of Deputy Clerk   MG
CIVIL -- GEN                              Page 16

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

(N.D. Cal. 2010) (discussing the statutory injury necessary to state a claim under the California Consumers Legal Remedies Act).

Moreover, Burton's alleged injury that he did not receive the full value of the cable services that he bargained and paid for is unavailing, as Burton does not allege that he purchased the cable services in order to secure TWC's compliance with the relevant statutory provisions.  See Miller v. Hearst Communications, Inc., CV 12-0733-GHK PLAX, 2012 WL 5439897, at *1 (C.D. Cal. Nov. 7, 2012) ("[T]he fact that Plaintiff spent money on her subscription does not give rise to a cognizable economic injury because she does not allege that she spent that money specifically to secure STL disclosures.").

Since Burton has not alleged a particularized economic injury as to his retention claims, his notice claims must also fail as they are derivative.  That is, a claim against TWC for failing to notify Burton that it retained his PII cannot stand if Burton's claim for retention fails under Article III injury standards.

### iii.   Retention of Plaintiff's PII

As discussed above, the injuries identified by Burton fail to establish a particularized or imminent injury suffered by him.  The particularity of Burton's retention and notice claims fails on another front.  Burton fails to specify facts supporting his claim that TWC actually retained his personal information.

In determining that the plaintiff's injury was sufficiently particularized, the Ninth Circuit reasoned in Jewel that she "alleged with particularity that *her* communications were part of the dragnet" conducted by the government.  Jewel v. Nat'l Sec. Agency, 673 F.3d 902, 910 (9th Cir. 2011).  Specifically, Jewel "described in detail the particular electronic communications equipment used ('4ESS switch' and 'WorldNet Internet Room') at the particular AT&T facility (Folsom Street, San Francisco) where Jewel's personal and private communications were allegedly intercepted in 'a secret room known as the SG3 Secure Room.'"  Id.  Burton's allegations do not approach the particularity of Jewel's.  Burton states only that "Time Warner still retains Burton's PII."  (Compl., ¶ 37.)  Burton does not identify what specific items of personal information TWC retains, where or in what form his records are kept, or any

MINUTES FORM 11                                              Initials of Deputy Clerk   MG
CIVIL -- GEN                              Page 17

12-cv-06764 JGB (AJWx)
TODD BURTON v. TIME WARNER CABLE, INC.
BENCH MEMO of March 19, 2013

information indicating how he is aware that TWC maintains his records.  Without
more, Burton's allegations are insufficient to identify the particularized injury that
Burton suffered at the hands of TWC.  See In re iPhone Application Litig., 844 F.
Supp. 2d 1040, 1055 (N.D. Cal. 2012) (requiring plaintiffs to "idenif[y] the specific
type of personal information collected, such as Plaintiffs' home and workplace
locations, gender, age, zip code"); Cf. Low v. LinkedIn Corp., 11-CV-01468-LHK,
2012 WL 2873847, at *6 (N.D. Cal. July 12, 2012) (finding that plaintiff articulated a
"particularized grievance" where "Low gives specific examples of the information
allegedly transmitted to third parties when he visited the LinkedIn website"); Fraley v.
Facebook, Inc., 830 F. Supp. 2d 785, 797 (N.D. Cal. 2011) (finding that the
complaint was particularized where it "contain[ed] specific allegations describing
exactly what information belonging to each named Plaintiff was used by Defendant"
and "how Defendant used that information").  As noted above, Burton must, as the
class representative, sufficiently show that he is a victim of the alleged injuries of
which he complains.  Since he has not done so, the Court finds that it does not have
Article III standing over the action.  See Gratz v. Bollinger, 539 U.S. 244, 289 (2003)
(Named plaintiffs representing a class "must allege and show that they personally
have been injured, not that injury has been suffered by other, unidentified members
of the class.").

        Since the Court finds that the complaint has not alleged a particularized injury
sufficient to confer Burton with standing, the Court lack jurisdiction over the instant
action.  Therefore, the Court will not address the remaining arguments in TWC's
Motion to Dismiss regarding the Twombly and Iqbal pleading standard or whether
the claims fail as a matter of law.

## IV. CONCLUSION

        For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss
without prejudice.  Plaintiff has 14 days from the filing of this Order to file a First
Amended Complaint.

        **IT IS SO ORDERED.**

MINUTES FORM 11                                    Initials of Deputy Clerk   MG
CIVIL -- GEN                        Page 18